**STATE of Delaware, Plaintiff Below–Appellant**

v.

**Michael D. HOLDEN, Defendant Below–Appellee**

**State of Delaware, Plaintiff Below–Appellant**

v.

**Lauren N. Lusby, Defendant Below–Appellee.**

Nos. 604, 2011, 605, 2011.

Supreme Court of Delaware.

Submitted: Nov. 19, 2012.

Decided: Feb. 5, 2013.

Paul R. Wallace (argued) and Morgan T. Zurn, Department of Justice, Wilmington, Delaware, for appellant.

John P. Deckers (argued) and Thomas A. Foley (argued), Wilmington, Delaware, for appellees.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice:

Plaintiff–Below/Appellant, the State of Delaware, appeals from a Superior Court order granting a motion to suppress by the Defendants–Below/Appellees Michael Holden and Lauren Lusby (collectively, "Holden") on grounds that the search warrant affidavit approved by the magistrate failed to establish probable cause. We hold that the magistrate had a substantial basis to conclude that probable cause existed to search Holden's home for contraband or evidence of a crime. Accordingly, we reverse the Superior Court judgment granting the motion to suppress.

### Facts and Procedural History

On February 24, 2010, a Drug Enforcement Administration Task Force stopped Michael Holden's car and discovered 12 pounds of marijuana. The State brought charges against Holden, but a Superior Court judge granted a motion to suppress the marijuana, finding that "the warrantless placement of a GPS device to track a suspect 24 hours a day constitutes an unlawful search."[1] Deprived of that evidence, the State entered a *nolle prosequi* on the charges.

Later, two confidential informants tipped the Wilmington Police Department that Holden was dealing drugs. The affidavit of probable cause in question here described both of the informants as past proven and reliable. The first informant stated that Holden never stopped selling marijuana after his earlier arrest, and that Holden was then selling both marijuana and oxycodone from his house in Newark. The informant provided additional information: that Holden lived at a particular address in Newark with his girlfriend Laura Lusby, that Holden was driving a white Chrysler registered to Lusby's father, and that Holden had a male roommate.

The second informant told police that Holden continued selling marijuana, multiple pounds at a time, and that he also sold both cocaine and oxycodone by the ounce. The second informant agreed that Holden was selling drugs from his house in Newark, where he also kept his stash. He also told police that Holden was driving a Chrysler 300M with Maryland registration, and that Holden was living with his girlfriend, a heavy-set "white" woman.

After receiving those tips, police officers verified them in part. Holden's driver's license showed that he did live at the address described in Newark. Police officers also saw Holden leave the house and drive off in a white Chrysler 300.

On April 4, 2011, officers with the Drug Enforcement Administration Task Force watched Holden and Lusby's house. A man pulled into the driveway in a silver Chrysler and stayed in his car. Within five minutes, Holden returned to the house, parked his car in the driveway, and went inside, accompanied by a passenger from his car and the man from the silver Chrysler. About ten minutes after he entered the house, the driver of the silver Chrysler returned, and drove off.

Officers followed the man in the silver Chrysler, who pulled into a shopping center, parked his car, walked to the passenger side, and placed "what appeared to be small objects in his right hand."[2] An officer approached the man and identified himself, at which point the man "quickly clasped both hands."[3] Fearing the man would attempt to throw away the objects in his hand, the officer grabbed his hand and discovered six oxycodone pills. The officer identified the man as Vincent Pfeiffer. Although Pfeiffer claimed he had a prescription bottle for the pills in the car, none was found. Pfeiffer "was also deceptive with officers when asked where he was coming from."[4]

---

1. *State v. Holden*, 54 A.3d 1123 (Del.Super.2010). Subsequently, the United States Supreme Court also held that the attachment of a GPS tracking device to a vehicle by the government constitutes a search and seizure within the meaning of the Fourth Amendment. *See U.S. v. Jones*, —— U.S. ——, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012).

2. Rentz Aff. of Probable Cause, Op. Br.App. at ¶ 9.

3. *Id.*

4. *Id.*

An officer then prepared and submitted the affidavit, and secured a search warrant from a Justice of the Peace. Police officers executed the warrant the same day as Pfeiffer's arrest. When the officers arrived, Holden ran into the backyard. Lusby began to run, but stopped when an officer threatened to release a dog. In a common area, police officers found marijuana, a sifter for grinding marijuana, and a digital scale. In Holden and Lusby's bedroom, police found a 59.47 gram chunk of cocaine, cocaine residue, and empty prescription bottles for oxycodone. The State filed charges against Holden and Lusby.

After a grand jury indicted Holden and Lusby, a Superior Court judge consolidated the cases to determine whether the magistrate had properly granted the search warrant. The Superior Court judge determined the warrant should not have been issued because the affidavit in support of the warrant did not establish probable cause:

> Here, aside from Rentz's claim that C.I. # 1 is a past proven reliable informant (and C.I. # 2 providing information similar to that provided by C.I. # 1) nothing in the [affidavit] demonstrates C.I. # 1's reliability. C.I. # 1 and C.I. # 2 never bought drugs from Holden ..., nor did they state that they ever saw Holden sell drugs from his home. Moreover, the police could not corroborate the confidential informants' statements to the extent necessary for a search.... [T]he information provided by the confidential informants to the police describing Holden's house and car is information that any neighbor could have provided to police. C.I. # 1 told police that Holden made drug deliveries in his Chrysler.

But, when the police stopped Holden in his Chrysler, no drugs were found in his car. It is also important to note that although both confidential informants claimed Holden was selling drugs from his home, during surveillance over a significant period of time (on three separate occasions) the police only saw one person come to Holden's home. The Police never observed the "foot traffic" typically associated with drug sales from a home and the neighbors never complained to the police of drug activity at Holden's home. C.I. # 2 said that Holden used his residence as a "stash house," yet the police did not mention suspected deliveries or people carrying bags in or out of Holden's home in the [affidavit]. Further, the [affidavit] never indicates that Holden's home is in a high drug area.[5]

The State appealed. A panel of this Court heard arguments and issued an opinion reversing the Superior Court's grant of Holden and Lusby's motion to suppress. This Court granted Holden and Lusby's motion for rehearing en Banc pursuant to Supreme Court Rule 4(f)(ii). En banc, we find merit to the State's appeal and reverse.

### Discussion

■ We review the Superior Court's grant of a motion to suppress for an abuse of discretion.[6] "Where the facts are not in dispute and only a constitutional claim of probable cause is at issue, this Court's review of the Superior Court's ruling is de novo."[7]

The State claims the Superior Court erroneously evaluated the affidavit of

5. State v. Holden, 2011 WL 4908360, at *5 (Del.Super. Oct. 11, 2011) (internal citations omitted).

6. Lopez–Vazquez v. State, 956 A.2d 1280, 1284 (Del.2008).

7. Smith v. State, 887 A.2d 470 (Del.2005).

probable cause without observing the proper level of deference to the magistrate's finding of probable cause. The State also asks this Court to clarify or revise our standard for the level of deference a court should exercise when reviewing a magistrate's factual findings. We decline to alter our settled jurisprudence. But we do hold that the magistrate had a substantial basis to conclude from the affidavit that probable cause existed to search Holden's home. Holden's motion to suppress should have been denied by the Superior Court.

■ The Fourth Amendment of the U.S. Constitution requires that a search warrant be issued only upon a finding of probable cause,[8] which must be premised on the information within the four-corners of the affidavit in support of a search warrant.[9] The magistrate issuing the warrant must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit—including the veracity and the basis of knowledge of persons supplying hearsay information—there is a fair probability that contraband or evidence of a crime will be found in a particular place.[10] In reaching a decision, a magistrate's finding should be based on the totality of the circumstances. Under this test, the magistrate must consider the reliability of the informant, the details contained in the informant's tip, and the degree to which the tip is corroborated by independent police surveillance and information.[11]

■ A court reviewing the magistrate's determination has the duty of ensuring "that the magistrate had a substantial basis for concluding that probable cause existed."[12] A magistrate's determination of probable cause "should be paid great deference by reviewing courts" and should not, therefore, "take the form of a de novo review."[13] "Notwithstanding this deference," the reviewing court must determine whether the magistrate's decision reflects a proper analysis of the totality of the circumstances.[14]

The basis for the well-established "great deference" standard is the practical approach the United States Supreme Court has applied under the Fourth Amendment.

[Previous Supreme Court] decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage

---

8. U.S. Const. amend. IV; *U.S. v. Ventresca*, 380 U.S. 102, 107, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

9. *LeGrande v. State*, 947 A.2d 1103, 1107 (Del. 2008) (internal citation omitted).

10. *Illinois v. Gates*, 462 U.S. 213, 237, 103 S.Ct. 2317, 76 L.Ed.2d 527 (U.S.1983).

11. *LeGrande*, 947 A.2d at 1107–08.

12. *Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317.

13. *Id.*

14. *LeGrande*, 947 A.2d at 1108 (*citing United States v. Leon*, 468 U.S. 897, 915, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).

police officers from submitting their evidence to a judicial officer before acting.[15]

The U.S. Supreme Court has also explained the danger of lowering the level of deference due warrants signed by neutral magistrates.

> If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the warrant clause that might develop at the time of the search. In addition, the possession of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct, by assuring "the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." [16]

For these reasons, the U.S. Supreme Court has held for decades that "affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial" and are entitled to "great deference." [17]

This Court also has eschewed a "hyper-technical" approach to reviewing a search warrant affidavit.[18] We have held that, "the affidavit supporting the search warrant must be 'considered as a whole and not on the basis of separate allegations.'" [19] We recently summarized the requirements for an affidavit's adequacy as follows:

> The affidavit must set forth facts permitting an impartial judicial officer to *reasonably* conclude that the items sought would be found at the location. The determination of whether the facts in the affidavit demonstrate probable cause requires a *logical* nexus between the items being sought and the place to be searched.[20]

■ Here, the affidavit of probable cause provided evidence from which the magistrate could conclude reasonably that evidence of criminal activity would be found in the house described in the warrant. Two past proven and reliable confidential informants stated that Holden sold drugs from the house, including oxycodone. When police officers stopped Pfeiffer after he just left Holden's house and discovered oxycodone without a prescription, they discovered information tending to corroborate these tips.

■ A tip from a confidential informant can provide probable cause, if the totality of the circumstances demonstrates the tip's reliability:

> An informant's tip may provide probable cause for a warrantless arrest where the totality of the circumstances, if corroborated, indicates that the information is reliable. In making that determination, a court must consider the reliability of the informant, the details contained in the informant's tip, and the degree to which the tip is corroborated by inde-

---

**15.** *Ventresca*, 380 U.S. at 108, 85 S.Ct. 741.

**16.** *Gates*, 462 U.S. at 236, 103 S.Ct. 2317 (*quoting United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)).

**17.** *Spinelli v. U.S.*, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) (overruled on other grounds in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

**18.** *Gardner v. State*, 567 A.2d 404, 409 (Del. 1989).

**19.** *Id.* (*quoting Jensen v. State*, 482 A.2d 105, 111 (Del.1984)).

**20.** *Jones v. State*, 28 A.3d 1046, 1057 (Del. 2011) (emphasis in original) (internal citations omitted).

pendent police surveillance and information.[21]

■ In past cases, we have held that the accurate prediction of future movements adequately corroborates a tip even from an anonymous informant.[22] Corroboration of an informant's tip about a suspect's movements suggests that the informant possesses knowledge of the suspect's criminal behavior, because the informant knows the person well enough to know what they will do. Through similar logic, the circumstances of the discovery of oxycodone on Pfeiffer, and his deception when asked where he was coming from, corroborate the two informants' tips in this case that Holden sold drugs at his house. The tips predicted the delivery of drugs at Holden's house. The circumstances of Pfeiffer's possession of oxycodone and his deception about coming from Holden's house when the officers knew he had just been there, justified a reasonable inference that a delivery of drugs had occurred. The corroboration suggests the informants knew that police officers could find drugs at Holden's house.

The trial judge focused on two purported shortcomings in the affidavit. First, the officers did not observe a high level of foot traffic, "typically" associated with drug dealing.[23] Second, because this was not a controlled buy, the police could not conclusively establish Pfeiffer obtained the drugs at Holden and Lusby's house.[24] But a template of "typical" facts is not the *sine qua non* for a finding of probable cause:

> The task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.[25]

So long as the issuing magistrate had a substantial basis for concluding that probable cause existed, a reviewing court should not suppress the evidence seized pursuant to that warrant.

That rule holds even though another portion of one of the informants' tip was not corroborated. Police did not observe a high level of foot traffic. But they did find oxycodone without a prescription on a person who made a brief visit to the house and then dissembled about the location he had just left. The totality of the circumstances shown by the affidavit provided sufficient corroboration of the remainder of the tip. There was a substantial basis for the magistrate to conclude that probable cause existed to search Holden's home.

**21.** *Cooper v. State*, 32 A.3d 988, 2011 WL 6039613, at *5 (Del. Dec. 5, 2011) (TABLE).

**22.** *Cooper*, 2011 WL 6039613, at *6 ("The CI predicted that Cooper would arrive at 14th Street and French Street...."); *Tolson v. State*, 900 A.2d 639, 643 (Del.2006) ("Specifically, Allen was able to predict details of Tolson's behavior that supported the conclusion that Allen was truthful."); *Miller v. State*, 25 A.3d 768, 771–73 (Del.2011).

**23.** *Holden*, 2011 WL 4908360, at *5 ("It is also important to note that although both confidential informants claimed Holden was selling drugs from his home, during surveillance over a significant period of time (on three separate occasions) the police only saw one person come to Holden's home. The police never observed the 'foot traffic' typically associated with drug sales from a home and the neighbors never complained to the police of drug activity at Holden's home." (citation omitted)).

**24.** *Id.* at *6 (finding no basis to find that the drugs were in Holden's house, because "the alleged sale did not take place during a controlled buy.").

**25.** *Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317.

*Conclusion*

The judgment of the Superior Court is **REVERSED** and these matters are **REMANDED** for further proceedings consistent with this opinion.