IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,          :
                            :        ID No. 1509015531
                            :        In and for Kent County
                            :
        v.                  :
                            :
JEFFREY L. CRIPPEN,         :
                            :
        Defendant.          :
                            :

## ORDER

On this 15th day of June 2016, having considered Defendant Jeffrey L. Crippen's ("Defendant's") Motions to Suppress, and the State's response, it appears that:

1. Before this Court are two motions to suppress evidence challenging two separate search warrants. The first search warrant targets the Defendant and a residence at 92 Village Drive, Delaware 19901 ("the 92 Residence"). The second search warrant targets electronically stored data from a cell phone found as a result of the first search warrant. Defendant argues that the four corners of the affidavits in support of the warrants do not provide sufficient details to establish probable cause. The State opposes stating that the facts set forth within the four corners of the affidavits do establish probable cause. After considering the written submissions and the arguments of the parties, the Court finds the State's arguments persuasive. For the reasons discussed below, Defendant's motions to suppress are both **DENIED**.

2. All facts stated herein are derived from the four corners of the two affidavits. On September 18, 2015, Detectives Jordan Miller ("Affiant 1") and Matthew Krogh ("Affiant 2"), from the City of Dover Police Department, applied for a search warrant for Defendant, the 92 Residence, and any property and vehicles linked to either. The

affidavit of probable cause for the search warrant ("the Affidavit") contains information from four separate past-proven reliable confidential informants regarding Defendant's sale of cocaine. The Affidavit also contains information regarding controlled purchases that were conducted by one of the confidential informants, as well as information discovered through independent investigation by law enforcement. The first confidential informant ("CI-1"), referred to as CI number 495 in the Affidavit, provided information to Affiant 1 on December 13, 2013. CI-1 stated that Defendant was going to be one of three individuals purchasing 25 ounces of cocaine from an African American male referred to as "L." CI-1 provided the sale location to investigators who conducted surveillance. After the exchange, where CI-1 and the Defendant were observed to be present, through a subsequent traffic stop after the exchange, officers seized $26,630, which was obtained from the sale of the drugs. At the time of the sale, Defendant was on probation after a recent release from prison for a sentence related to drug dealing.

3. In July of 2014, the next confidential informant, ("CI-2"), who was referred to as CI number 445 in the Affidavit, provided information regarding the residence of Defendant's girlfriend at 92 Village Drive, DE 19901. CI-2 also stated that his girlfriend drove a red box type Chevrolet. On August 4, 2014, Affiant 1 observed a red Chevrolet HHR parked in front of the 92 Residence, which matched the description provided by CI-2. The vehicle was registered to a female named Milagros Muriel.

4. In May of 2015, a third confidential informant ("CI-3") referred to as CI number 17 in the Affidavit, contacted Affiant 1. CI-3 advised Affiant 1 that he or she could conduct controlled drug purchases from Defendant. CI-3 also positively identified Defendant as the same individual he or she knew to sell cocaine in the Dover area. Furthermore, CI-3 had provided prior information that proved to be accurate and led

2

to the arrest and conviction of individuals for drug offenses. During the weeks of May 10-16, 2015 and May 17-23, 2015, CI-3 conducted two separate controlled purchases of cocaine from Defendant at two different pre-determined meeting locations. Each controlled purchase netted an amount of suspected cocaine that field tested positive as cocaine. Also, each controlled purchase was directly with Defendant, according to the statement CI-3 gave to Affiant 1 immediately after the purchases. Furthermore, each controlled purchase was monitored and observed by Affiant 1 and other law enforcement. Immediately after the exchange, Affiant 2 observed Defendant leaving the predetermined location, and return to the 92 Residence.

5. Law enforcement attempted to conduct a third controlled purchase between CI-3 and Defendant during the week of September 13th through the 19th. CI-3 called Defendant, in the presence of Affiant 1, to schedule another controlled purchase. At that time, Defendant stated that it would have to wait until after six in the evening because he was going to be purchasing a semiautomatic pistol from another individual. CI-3 also provided information to law enforcement regarding Defendant's drug sales, and that one of the individuals Defendant supplied cocaine to was Guy Brummell ("Brummell"). The Affidavit corroborated identity information about Brummell. Affiant was also able to confirm that Brummell was a member of Defendant's drug distribution network. Affiant, along with another detective, had, themselves, previously executed a controlled purchase of cocaine from Brummell at 31 Moores Lane, Magnolia, Delaware. Finally, CI-3 informed Affiants 1 and 2 that he or she had seen nine ounces of cocaine inside the 92 Residence, as well as eight to nine ounces of cocaine inside 1163 Adams Court Dover ("1163 Residence"), which was Defendant's residence of record with probation and parole. CI-3 stated that Defendant utilized both residences, and that he stored cocaine at the 92 Residence.

6. A fourth confidential informant ("CI-4"), referred to as CI number 148 in the Affidavit, provided similar information, stating that Defendant stored cocaine inside of the 92 Residence, and that he made trips to New York for resupply.

7. On September 17, 2015, following the information provided by CI-3 and CI-4, Affiant 1 contacted the City of Dover and confirmed that the electric for the 92 Residence was still active and was under the name of Milagros Muriel. On the same day, Affiant 2, along with another detective, conducted surveillance on the 92 Residence. They observed an African American female, whom they believed to be Milagros Muriel, exit the Residence and enter a black Mercedes before departing the area. On that same day at 7:16pm, Affiant 2 observed a four door Honda Accord parked in front of the 92 Residence, with a registration belonging to Defendant and an individual named Natasha Maybin with an address at the 1163 Residence. On September 18, 2015 at approximately 8:15 in the morning, Affiant 1 observed a separate vehicle, a two door Honda Accord, with a registration also belonging to Natasha Maybin of the 1163 Adams Court Residence, parked in front of the 92 Residence. At approximately 9:57 that morning, a detective observed Defendant operating the aforementioned two door Honda Accord, that was previously parked in front of the 92 Residence. The search warrant application was then approved on September 18, 2015.

8.The search warrant was executed on September 21, 2015. The 92 Residence itself was searched, as well as the two door Honda Accord which was parked directly in front of the 92 Residence. Upon execution of the warrant, Defendant was observed attempting to flee the Residence through the master bedroom window, but was subsequently taken into custody at the bottom of the stairs in the living room of the Residence. Among the evidence located and seized were: a Ruger .9mm

semiautomatic handgun with serial number 331-38973 which was reported as stolen in August 2013; a magazine contained in the well of the gun with 17 rounds of .9mm ammunition; 5.2 grams of crack cocaine; various drug paraphernalia; $13,584 in United States Currency; and a LG flip style phone which was alleged to belong to Defendant. Affiant 1 then sought a second search warrant, seeking all data that could be derived from the cell phone.

9. The affidavit in support of the search warrant for the electronic data on the cell phone ("Affidavit 2") listed the items, drugs, paraphernalia, and cash seized as a result of the first search warrant. Furthermore, in Affidavit 2, Affiant 1 stated his belief that electronic data was stored inside the phone relating to illegal drug sales and firearm purchases. Affiant 1 also stated in Affidavit 2 that through his training and experience, he knew that subjects involved in the sale of illegal drugs often utilize their cellular phone for the purpose of facilitating illegal drug sales. He further stated that through his training and experience, he knew that cellular telephones are able to capture and store text messages, call logs, phone numbers, internet history, internet searches, contact lists, and photographs. Affidavit 2 also stated that the phone at issue was seized from the top of a night stand in the master bedroom. According to the affidavit, officers observed Defendant fleeing from that same master bedroom window during the execution of the search warrant.

10. On May 17, 2016, Defendant filed a motion to suppress any and all evidence seized as a result of the search warrant of Defendant and the 92 Residence. Defendant filed a second motion to suppress any and all evidence seized as a result of the search warrant submitted for all electronic records of the cell phone, which was seized as a result of the first search warrant. In his first motion, Defendant argues that the affiants used information that was stale by including facts that occurred greater than a year prior

to the execution of the warrant. Defendant further argues that much of the allegations were of potential, yet irrelevant criminal conduct and prior bad acts that were used as an attempt to influence the neutral, independent and detached magistrate ("magistrate"). Defendant's final argument regarding the first search warrant was that the four corners of the search warrant affidavit, prepared by Affiants 1 and 2, lacked sufficient detail and specificity to allow a magistrate to issue a search warrant for Defendant and the 92 Residence. In his second motion, Defendant argues that Affiant 1 failed to provide sufficient detail or evidence to allow a magistrate to find probable cause to believe that incriminating evidence would be found on the cell phone. Defendant also argues that Affiant 1 used conclusive statements and failed to provide the magistrate information regarding his training to support his allegation that drug dealers use cell phones to facilitate illegal drug sales. Finally, Defendant argues that the four corners of the affidavit did not provide sufficient detail to find probable cause. In response, the State argues that the four corners of the affidavits provide sufficient detail to find probable cause and emphasize the key information contained in the affidavits that it alleges, establishes probable cause for both search warrants.

11. Since the issues raised attack the sufficiency of the affidavits, and require a "four-corners analysis," the parties stipulated that no evidentiary hearing was necessary. Oral argument on the motions was held on June 10, 2016, and the Court reserved decision.

12. In a Motion to Suppress challenging the validity of a search warrant, the defendant bears the burden of proving that the challenged search or seizure was

6

unlawful.[1] The burden in a motion to suppress is by a preponderance of the evidence.[2] "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for ... conclud[ing] that probable cause existed."[3] Furthermore, "[a] magistrate's determination of probable cause should be paid great deference by reviewing courts."[4] Search warrant affidavits "in support of a search warrant application must set forth facts, that, within the affidavit's four corners, are sufficient for a neutral magistrate to conclude that . . . [probable cause exists]."[5] Probable cause exists "when the officer possesses information which would warrant a reasonable man in believing that a crime has been committed."[6] The finding of probable cause does not require proof beyond a reasonable doubt, or even that the defendant's guilt is more likely than not.[7] Probable cause only requires that the officer "present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability" that a crime has been committed and the defendant, or target of an affidavit, committed the crime.[8] The magistrate may make reasonable inferences from the factual allegations located therein.[9]

13. Furthermore, a "tip from a confidential informant can provide probable

---

[1] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005).

[2] *State v. Darling*, 2007 WL 1784185, at *1 (Del. Super. June 8, 2007), as corrected (July 3, 2007).

[3] *Illinois v. Gates*, 462 U.S. 213, 214 (1983).

[4] *Id.* at 236 (1983).

[5] *Lambert v. State*, 110 A.3d 1253, 1255 (2015) (citing *Rivera v. State*, 7 A.3d 961, 966 (Del.2010)).

[6] *State v. Betts*, 2015 WL 2066602, at *1 (Del. Super. Apr. 1, 2015).

[7] *Id.*

[8] *Id.* at *5.

[9] *Rybicki v. State*, 119 A.3d 663, 668-69 (Del. 2015).

cause, if the totality of the circumstances demonstrates the tip's reliability."[10] "In making that determination, a court must consider the reliability of the informant, the details contained in the informant's tip, and the degree to which the tip is corroborated by independent police surveillance and information."[11]

14. In *King v. State*[12], cited by the State, the Supreme Court of Delaware found probable cause existed to make an arrest, even though probable cause was primarily based on a tip from a past-proven reliable confidential informant.[13] In that case, officers received a call from a past, proven, reliable confidential informant who stated that "there was a black male wearing a black baseball cap and cut-off blue jeans at a card table on South Kirkwood Street who was in possession of a large amount of crack cocaine."[14] The officers knew the area described to be "an open air drug market where several arrests had been made in the past."[15] Based on this information alone, officers went to the area described, located the defendant wearing attire matching the description given to them, and arrested the defendant.[16] The officers performed a *Terry*[17] frisk and discovered a Life Savers container containing 1.3 grams of crack cocaine from the defendant's person.[18] The Court in *King* held that "the tip from the past proven reliable confidential informant, coupled with the detectives' observations

---

[10] *State v. Holden*, 60 A.3d 1110, 1115 (Del. 2013).

[11] *Id.* at 1115-16.

[12] *King v. State*, 633 A.2d 370 (Del. 1993) (TABLE).

[13] *Id.* at *2.

[14] *Id. at *1.*

[15] *Id.*

[16] *Id.*

[17] *Terry v. Ohio*, 392 U.S. 1 (1968).

[18] *King*, 633 A.2d at *1.

at the scene, clearly established probable cause to arrest [the defendant]."[19]

15. Here, the first search warrant application and affidavit contained sufficient information for a finding of probable cause. The confidential informants were all established, by affiants, to be past-proven reliable, and the information they provided was corroborated by investigation and observation by law enforcement. The affiants were given information on numerous occasions that Defendant stored cocaine at the 92 Residence. The information about the 92 Residence, that confidential informants provided, was corroborated by individual investigation by law enforcement. Furthermore, CI-3 conducted controlled purchases under the observation and surveillance of law enforcement, and each time law enforcement observed Defendant to be present at the transaction. Movements of persons and vehicles linking the Defendant to the 92 Residence were also observed. Sufficient details corroborated the various tips from the confidential informants, to bolster the information provided by the past-proven reliable informants under the totality of the circumstances. Based on the most recent controlled purchase, the recent corroboration, and the recent linkage of the Defendant to the searched residence, the Court also does not find that the affidavit fails to establish probable cause due to staleness. Accordingly, based on the totality of the circumstances, this Court finds that the first affidavit contained sufficient information for a magistrate to find probable cause. For these reasons, Defendant's first Motion to Suppress regarding the search warrant for Defendant and the 92 Residence is **DENIED.**

16. The second search warrant application and affidavit also contained sufficient information for a finding of probable cause. Recently, this Court in in *State v. Albert*[20]

---

[19] *Id.* at *2.
[20] *State v. Albert*, 2015 WL 7823393 (Del. Super. Dec. 3, 2015).

9

recognized that "[t]he United States Supreme Court recently ruled that police officers must generally secure a search warrant before a cell phone may be searched. Although that general requirement to obtain a search warrant might be new, the substantive requirements for securing a cell phone search warrant are not."[21] Delaware applies the same four corners test as outlined above; that is, the affidavit must provide on its face enough information to form a reasonable belief that evidence of Defendant's drug dealing would be found on the cell phones.[22]

17. Furthermore, the *Albert* Court directly addressed the extent to which an officer's training and experience can establish the "evidentiary nexus" between a cell phone and illegal drug activity.[23] In examining this issue, that Court cited *States v. Gholston* as persuasive authority for the law on cell phone search warrants due to the lack of authority in Delaware on the matter.[24] Namely, in *Gholston* the Federal District Court for the Eastern District of Michigan held that the "affidavit established a minimally sufficient nexus between the criminal activity under investigation and Defendant's cell phone, such that a reasonable officer in [the affiant's position] would have had a good-faith belief in the validity of the warrant issued by the Magistrate Judge."[25] There, the police seized a cell phone in defendant's possession at the time of his arrest.[26] The arresting officer then submitted an application and affidavit to search the cell phone.[27] As in the case at hand, the affidavit at issue in that case provided

---

[21] Id. at *3 (citing *Riley v. California*, 134 S.Ct. 2473, 2485 (2014)).

[22] *Id.* at *3.

[23] *Id.* at *4.

[24] *Id*.

[25] *United States v. Gholston*, 993 F. Supp. 2d 704, 720 (E.D. Mich. 2014).

[26] *Id.* at 707-08.

[27] *Id.*

information regarding the crime that defendant allegedly committed, the results of the search of the previous authorization of defendant's home, and the officer's belief, based on the officer's training and experience, that the phone contained evidence of the crime.[28] Furthermore, the *Gholston* Court cited various court decisions holding, that under similar circumstances, probable cause existed to issue a warrant to search a cell phone.[29] As in *Albert*, this Court finds the reasoning of the *Gholston* Court persuasive.

18. Other federal district courts have found similarly. In *United States v Wiseman*, the District Court for the District of Kansas found probable cause when the cell phone was found in the defendant's vehicle.[30] There, the affidavit in support of the warrant application described the circumstances surrounding the arrest of the defendant. The affidavit there also set forth the opinion of the officer, based on the officer's experience, that the cell phone would contain evidence of a crime.[31] The *Wiseman* court stated that "it had become common knowledge in the courts that cellular phones, complete with memory of numbers recently or frequently called, or their address books, are a known tool of the drug trade.[32] Finally, the District Court for the Eastern District of Pennsylvania held, in *United States v. Georgiou*, "that probable cause was not defeated by the absence of evidence that the particular devices to be searched were actually used by the defendant in furtherance of his alleged criminal activity."[33]

19. Here, the second affidavit for the second search warrant established that the

---

[28] *Id.* at 708.

[29] *Id.* at 719-20.

[30] *United States v. Wiseman*, 158 F.Supp.2d 1242, 1249 (D.Kan.2001).

[31] *Id.*

[32] *Id.*

[33] *United States v. Georgiou*, 2009 WL 4641419, at *10 (E.D.Pa. Dec. 7, 2009).

11

cell phone was found in the master bedroom, at the time the Defendant was attempting to flee, placing the Defendant in the same room as the cell phone, at the same time. Also, Affidavit 2 established that during the search permitted by the first warrant, law enforcement found 5.2 grams of cocaine in the vehicle parked outside of the 92 Residence, a digital scale and other drug paraphernalia on a shelf in a pantry, as well as a stolen firearm. The second affidavit further stated the Affiant's opinion, like in *Albert*, *Gholsto*n, and *Wiseman*, that, based on the Affiant's training and experience, the cell phone would contain incriminating evidence of the crime alleged. Finally, this Court finds the holding in *Georgiou* that the absence of evidence that the Defendant actually used the device does not defeat probable cause to be persuasive. This Court finds that the affidavit in support of the search warrant application for the phone contained enough facts to provide a sufficient nexus between the criminal activity under investigation and the cell phone seized. For these reasons, Defendant's second motion to suppress is also **DENIED.**

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Judge

12