**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

VIVIAN L. MEDINILLA
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
TELEPHONE (302) 255-0626

August 21, 2017

Michael W. Modica, Esq.
Michael W. Modica Law Office
715 N. King Street, Suite 300
P.O. Box 437
Wilmington, DE 19899

Phillip M. Casale, Esq.
Department of Justice
Carvel State Building
820 North French Street
Wilmington, DE 19801

Re: ***State v. Tyrell Simpson***
***Case ID No.: 1608013425***

Dear Counsel:

This is the Court's decision on Tyrell Simpson ("Defendant")'s Motion for Reargument, filed on July 28, 2017. For the reasons stated below, Defendant's Motion for Reargument is **GRANTED**, **in part**; **DENIED**, **in part**. Further, after a reconsideration of Defendant's Amended Motion to Suppress in light of this Court's decision on Defendant's Motion for Reargument, for the reasons stated below, Defendant's Amended Motion to Suppress is **DENIED**.

### *Factual and Procedural Background*

The facts underlying Defendant's Motion for Reargument and Amended Motion to Suppress have been previously described by this Court in its July 20, 2017 Letter Opinion denying Defendant's Motion to Suppress. The Court incorporates that Opinion here and writes to supplement it as relevant to the Court's analysis on the pending Motion for Reargument.

After the Court issued its Letter Opinion in this case, the State sought clarification of the Court's analysis of the only search warrant submitted for review. Defendant then filed a Motion for Reargument. The State filed a response to the

Motion for Reargument on July 31, 2017. Meanwhile, upon request of the Court, Defendant filed an Amended Motion to Suppress on August 8, 2017, attaching the proper search warrant for the Court's consideration. A hearing on the Motion for Reargument was held on August 14, 2017.

### *Standard of Review*

Delaware Superior Court Criminal Rule 57(d) states: "In all cases not provided for by rule or administrative order, the court shall regulate its practice in accordance with the applicable Superior Court civil rule. . . ."[1] "Superior Court Civil Rule 59[] is made applicable to criminal cases by Superior Court Criminal Rule 57(d)."[2]

Civil Rule 59(e) permits the Court to reconsider "its findings of fact, conclusions of law, or judgment. . . ."[3] "Delaware law places a heavy burden on a [party] seeking relief pursuant to Rule 59."[4] To prevail on a motion for reargument, the movant must demonstrate that "the Court has overlooked a controlling precedent or legal principle[], or the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision."[5] Further, "[a] motion for reargument is not a device for raising new arguments,"[6] nor is it "intended to rehash the arguments already decided by the court."[7] Such tactics frustrate the interests of judicial efficiency and the orderly process of reaching finality on the issues.[8] The moving party has the burden of demonstrating "newly discovered evidence, a change of law, or manifest injustice."[9]

---

[1] DEL. SUPER. CT. CRIM. R. 57(d).

[2] *Guardarrama v. State*, 911 A.2d 802, 2006 WL 2950494, at *3 (Del. Oct. 17, 2006) (TABLE).

[3] *Hessler, Inc. v. Farrell*, 260 A.2d 701, 702 (Del. 1969). *See* DEL. SUPER. CT. CIV. R. 59(e).

[4] *Kostyshyn v. Comm'rs of Bellefonte*, 2007 WL 1241875, at *1 (Del. Super. Apr. 27, 2007).

[5] *Bd. of Managers of Del. Criminal Justice Info. Sys. v. Gannett Co.*, 2003 WL 1579170, at *1 (Del. Super. Jan. 17, 2003), *aff'd in part*, 840 A.2d 1232 (Del. 2003).

[6] *Id.*

[7] *Kennedy v. Invacare Corp.*, 2006 WL 488590, at *1 (Del. Super. Jan. 31, 2006).

[8] *See Plummer v. Sherman*, 2004 WL 63414, at *2 (Del. Super. Jan. 14, 2004).

[9] *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 55 (Del. Super. 1995).

*Discussion*

## I.    Motion for Reargument

The Court begins with a discussion of Defendant's Motion for Reargument.

At the hearing on this Motion, Defendant made three arguments: (1) the Court's earlier decision rested on a supposed "hospital policy" exception to the Fourth Amendment with respect to the seizure of the vehicle; (2) the Court failed to consider whether Defendant was "arrested" rather than "detained;" and (3) the search of the car was tainted by the initial illegal seizure of the vehicle.[10]  Each of these will be addressed in turn to assess whether Defendant has met his burden under Rule 59.

### A.    Detention of the Vehicle

First, the Court did not rest its earlier decision on a "hospital policy" exception to the Fourth Amendment.  The Court found that the vehicle and, later in the encounter, Defendant himself, were reasonably detained under 11 *Del. C.* §§ 1902(a), 1910 and *Harris v. State*.[11]  This finding was based on an examination of "the totality of the circumstances surrounding the situation 'as viewed through the eyes of a reasonable, trained [peace] officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts.'"[12]

Specifically, the Court found that Constable Richardson, prior to the detention of the vehicle: (1) observed the vehicle arrive at the hospital; (2) noted that Defendant was the sole occupant of the vehicle; (3) observed bullet holes in the frame of the vehicle; (4) noted the presence of broken windows on the driver's side

---

[10] Defense counsel also raised a fourth issue—whether a peace officer has the same power to effect seizures of *property* as does a police officer.  This issue was not raised in the Motion to Suppress nor in the Amended Motion to Suppress and is, therefore, not considered here.  Nevertheless, the basis for this proposition appears dubious considering 10 *Del. C.* § 2705(2): "[A constable shall:] . . . Exercise the same powers as peace officers and law-enforcement officers, in order to protect life and property, while in the performance of the lawful duties of employment. . . ." 10 *Del. C.* § 2705(2) (2013 & Supp. 2016).

[11] 622 A.2d 1095, 1993 WL 61667 (Del. 1993) (TABLE).

[12] *Purnell v. State*, 832 A.2d 714, 719 (Del. 2003) (quoting *Woody v. State*, 765 A.2d 1257, 1263 (Del. 2001) (quoting *Jones v. State*, 745 A.2d 856, 861 (Del. 1999))).

of the vehicle; (5) heard from Defendant that he had been shot; and (6) observed blood on Defendant's shirt and arm. Moreover, Constable Richardson had on prior occasions encountered people involved in shootings entering the hospital to seek medical treatment. Additionally, Constable Richardson knew that there was evidentiary value in securing such vehicles in the event Wilmington Police wanted to investigate the circumstances of an apparent shooting in the city.

All of these factors permitted Constable Richardson to reasonably detain the vehicle, securing it for police until they were able to question Defendant about the shooting incident.

Accordingly, the Court found that the detention of the vehicle was supported by reasonable and articulable suspicion that the vehicle was involved in a shooting. The presence of a hospital policy, while relevant to Constable Richardson at the time of the incident, does not vitiate the objective indicia that the vehicle was involved in a shooting under the totality of the circumstances. The Court did not overlook precedent or legal principles, nor did it misapprehend law or facts such that it would have changed its earlier ruling. Therefore, the Court denies Defendant's Motion for Reargument as to the detention of the vehicle.

### B. Arrest vs. Detention

Although Defendant continues to raise issues about whether he was arrested or detained after his encounter with Constable Richardson, it should be noted that the State is not seeking to admit any evidence from Defendant's seizure. Any evidence sought to be suppressed emanates solely from the search of the vehicle. Defense counsel recognized as much during the hearing. However, because he raises this issue as the second basis for reargument, the Court briefly addresses this below.

The Court found that Defendant was reasonably detained pending Wilmington Police's ability to question him about the nature of the shooting. Tacitly, this holding rejects Defendant's contention that he was under arrest at any time during the encounter outside the hospital. Defendant states summarily that it was error for the Court to conclude, on these facts, that this was anything other than an arrest. This Court disagrees, again.

As the Court noted in its earlier decision, the Court held that Constable Richardson had reasonable and articulable suspicion to temporarily detain

4

Defendant according to 11 *Del. C.* §§ 1902(a), 1910 and *Harris v. State*.[13] After Defendant reappeared suddenly behind Constable Richardson, the Court found that the constable had reasonable suspicion to detain Defendant based on the same factors available to the constable for the detention of the vehicle, as well as the aggressive lunge of Defendant towards Constable Richardson as he was trying to access the vehicle. Defendant simply rehashes his prior argument related to the same set of facts.

Therefore, the Court denies Defendant's Motion for Reargument on this ground as well.

### C. Search Warrant

Finally, the Court finds that it misapprehended the facts regarding the search warrant that precipitated the search of the vehicle such that Defendant's Motion for Reargument must be granted as to this issue. The State and Defendant are in agreement that Defendant's original Motion to Suppress did not contain the correct search warrant. As such, the Court reopens this issue below in order to conduct a proper four-corners analysis of the correct search warrant consistent with Delaware law.

### II. Motion to Suppress – Search Warrant

Where a defendant contests the validity of a search warrant, the reviewing court must ensure that "the [issuing] magistrate had substantial basis for concluding that probable cause existed."[14] This review should be greatly deferential, eschewing a *de novo* approach. "'Notwithstanding this deference,' the reviewing court must determine whether the magistrate's decision reflects a proper analysis of the totality of the circumstances."[15]

---

[13] The Court's earlier decision quoted *Harris* for the proposition that "[t]here is a 'legitimate law enforcement interest . . . in preventing the flight of possible suspects from the immediate vicinity of [a] crime. . . .'" 1993 WL 61667, at *2. Further, the *Harris* Court recognized that the authority of a peace officer to conduct an investigatory stop under either § 1902(a) or § 1910 "extends to persons who may possess information about a recently committed crime." *Id.*

[14] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) (quoting *Illinois v. Gates*, 426 U.S. 213, 238-39 (1983)).

[15] *Id.* (quoting *LeGrande v. State*, 947 A.3d 1103, 1108 (Del. 2008)).

5

The correct search warrant in this case (attached to Defendant's Amended Motion to Suppress) is five paragraphs in length.

The first paragraph of the attached text to the warrant states that there is a "continuing investigation into . . . illegal activities occurring within the City of Wilmington. . . ." It concludes with a statement regarding the affiant's experience and employment with the Wilmington Police Department.

The second paragraph explains that, on August 17, 2016 at approximately 1:38 p.m., the police were called to a shooting scene in the area of 31st and West Streets in Wilmington. It states that, upon arrival at the shooting scene, "the victim was transported by the above listed Red in Color Pontiac Grand Prix bearing Delaware Temp Tag XP391430."

The third paragraph states that the affiant was at the shooting scene and observed "numerous spent shell casings and what appears to be broken automobile glass."

The fourth paragraph states that the affiant arrived at Wilmington Hospital and observed the red vehicle with "numerous broken windows."

The final paragraph states that the search of the vehicle will look for "any/all ballistic evidence to include documentation of collection of same to include, but not limited to photographs."

Defendant contends in his Amended Motion to Suppress that the warrant is devoid of any indication that *Defendant* committed an offense. Further, at oral argument, Defense counsel confirmed that the alleged deficiency of the warrant was ancillary to his primary contention that the vehicle search was tainted by the earlier seizure of Defendant and his vehicle. To put it his way, the warrant was the "fruit of the poisonous tree." However, since this primary issue is addressed above, the Court will only address the issue of whether the search warrant facially supports a finding of probable cause.

It is Defendant's burden to prove the warrant is unsupported by probable cause.[16] Defendant has not met this burden. The search warrant was issued solely for the vehicle. Whether Defendant was a suspect at the time of the application for the search warrant is immaterial to an analysis of the probable cause in the warrant

---

[16] *See State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005) (citations omitted).

as to the vehicle.

What is more, the Court finds that the warrant was supported by probable cause within its four corners. The warrant states the place to be searched (the red Pontiac vehicle with temporary tag XP391430) and the evidence it seeks to find in the search ("any/all ballistic evidence" related the suspected shooting at 31st and West Streets). After a review of the search warrant in this case, the Court finds that the issuing magistrate had a "substantial basis for concluding that probable cause existed."[17]

Thus, Defendant's Amended Motion to Suppress, contending that the search warrant is unsupported by probable cause, is **DENIED**.

### *Conclusion*

For the reasons stated above, Defendant's Motion for Reargument is **GRANTED, in part; DENIED, in part**. Further, after reconsideration of Defendant's Amended Motion to Suppress, for the above reasons, Defendant's Amended Motion to Suppress is **DENIED**.

**IT IS SO ORDERED**.

Sincerely,

Vivian L. Medinilla
Judge

oc: Prothonotary
cc: Defendant
Investigative Service Office

---

[17] *Holden*, 60 A.3d at 1114 (quoting *Gates*, 462 U.S. at 238-39).