**THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE, )
)
v. ) **I.D. No. 2306012215**
)
)
DAWON BROWN, )
                  **Defendant.** )

Date Submitted:  February 13, 2024
Date Decided: March 1, 2024

## *Upon Defendant's Motion to Suppress*

This 1st day of March, 2024, upon consideration of Defendant Dawon Brown's Motion to Suppress[1], the State's Response in Opposition and the record in this matter, it appears to the Court that:

1.      Defendant Dawon Brown ("Defendant") was arrested on June 21, 2023, following the execution of a search warrant at his home where guns and drugs were discovered.[2]  Defendant was thereafter indicted on two (2) counts of Possession of a Firearm During the Commission of a Felony, two (2) counts of Possession of a Firearm by a Person Prohibited, one (1) count of Possession of Ammunition by a Person Prohibited, two (2) counts of Drug Dealing, one (1) count of Tampering with

---

[1] *State v. Dawon Brown*, Crim. Act. No. 2304012215, D.I 7.
[2] D.I. 1.

Physical Evidence, one (1) count of Conspiracy Second Degree and two (2) counts of Endangering the Welfare of a Child.[3]

2.      Defendant filed the instant motion, moving to suppress the evidence seized from his residence at 724 North Pine Street, Wilmington, Delaware, on June 21, 2023, by the Wilmington Police Department (hereinafter "WPD").[4] Defendant's motion argues the search warrant obtained for his residence by WPD fails to establish probable cause in that: 1) it was based, in part, upon stale information; 2) the Affidavit to the warrant (hereinafter "Affidavit") is based upon hearsay and unreliable information; and that 3) the warrant does not provide authority for WPD to have seized weapons during their search.[5]

3.      The State opposes this motion, arguing the Affidavit establishes probable cause based upon proper, reliable information.[6]

4.      A review of a magistrate's finding of probable cause in issuing a search warrant is limited to a "four corners" review.[7] A magistrate may only issue a search warrant upon a finding of probable cause; a magistrate's determination is to be given great deference by a reviewing court.[8] The Affidavit supplied in support of the

---

[3] D.I. 3.

[4] D.I. 7.

[5] D.I. 7 & 13.

[6] D.I. 10.

[7] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013).

[8] *Id.* (internal citations omitted).

warrant must be reviewed as a whole and evaluated for probable cause while looking at the totality of the facts supplied. For instance, a tip from a confidential informant may give rise to a finding of probable cause if the totality of the other facts provided support such a finding.[9] A reviewing court must be assured that the magistrate had a substantial basis for their finding, and if such basis exists, the warrant should be upheld.[10] If a portion of the search warrant application is found to be improper, the reviewing court may strike that portion and review the remaining facts for a probable cause determination.[11]

5.  The search warrant at issue here states, in the "Greetings" section, that the magistrate was satisfied that:

> "there is probable cause to believe that certain property, namely 724 North Pine Street, Wilmington, Delaware, 19801… is used or intended to be used for Title 16, Section 4754, Delaware Code [sic], Manufactures, delivers, or possession with intent to manufacture, deliver a controlled substance to wit: heroin/fentanyl and any drug related paraphernalia commonly used to process, package, and/or consume drugs are being concealed on (premises)(person) [sic] described in the annexed affidavit and application or complaint…[sic]".[12]

6.  The Affidavit and Application of the warrant states the Affiant has reason to believe 724 North Pine Street contains "…heroin/fentanyl, paraphernalia,

---

[9] *Id.*
[10] *Id.*
[11] *Thomas v. State*, 305 A.3d 683, 703 (Del. 2023).
[12] Def. Mtn. to Suppress, Ex. A.

weapons and proceeds of heroin/fentanyl sales…"[13]  Further, the application seeks, in paragraph 7 of the application page, "Any rifle, pistol, handgun or any device that a short may be discharged or any weapon manifestly utilized to protect illegal drugs."[14]

7.     The Affidavit goes on, in a new set of numerical paragraphs, to list the probable cause in support of the warrant.  The Affidavit details: "[d]uring the second week of January 2023, the [Drug Organized Crime and Vice Division (hereinafter "DOCV")] unit received information from an anonymous source …who advised of illegal drug sales originating from the inside of 724 North Pine Street, Wilmington, DE.  The source advised of a possible suspect named Brandy, identified as a black female with braids.  The source advised that there is a firearm inside the residence."[15]

8.     The Affidavit then states during the first week of May, 2023, the "DOCV unit received a drug watch complaint from the WPD administration, advising of drug sales conducted out of 724 North Pine Street from possible suspect, Emanuel Turner []."  The Affidavit includes that in the second week of June, 2023, "the DOCV unit received information, originating from a community contact, who

---

[13] *Id.*
[14] *Id.*
[15] *Id.* at ¶ 3.

advised that a third party informed of drug dealing that is occurring at all hours of the day from renters located at 724 North Pine Street, Wilmington, Delaware."[16]

9. The Affidavit then details the surveillance that the DOCV conducted on this property during the third week of June, 2023. The surveillance revealed that multiple subjects were seated on the front steps of this property conversing with one another. It was observed that a black male, "in his 30's of age, of average height and weight, with a black beard and light brown twisty style hair which was shoulder length…wearing a black baseball cap and wearing a black fanny pack…over his shoulder, and appeared to have the word 'LEVIS'" written on it was observed entering and leaving the house multiple times. This male was identified, "[t]hrough investigative means" to be Defendant.[17]

10. At one point, Defendant was observed having just exited the residence, and was approached by a subject "on foot and briefly engaged in a verbal conversation…before [they walked] northbound together" and into an alleyway out of WPD sight. Within 10-20 seconds of the two entering the alleyway, the subject emerged first, followed by Defendant, who returned to 724 North Pine. The subject was then stopped by WPD and was found to be in the possession of heroin. The subject stated the heroin was just purchased from someone known as "Wani" and

---

[16] *Id.* at ¶ 4, 5.
[17] *Id.* at ¶ 6.

positively identified Defendant, via a single photograph provided by WPD.[18]  The Affiant details how the activity observed by Defendant was "consistent with and indicative of a street level drug deal[.]"[19]  Two zip lock bags containing a white powdery substance, "consistent with heroin/fentanyl" was recovered from the subject who was stopped.[20]

11.    Finally, the Affiant states that the DOCV received a tip, in the third week of June, 2023, from a past proven, confidential source, that a black male subject, nicknamed "Wani" sells heroin on the 700 block of North Pine Street.[21]  The Affiant also confirmed through a DELJIS inquiry, that Defendant lists 724 North Pine Street, Wilmington, as his address.  The confidential informant identified Defendant as "Wani."[22]

12.    First and foremost, Defendant is correct that the information provided in January, 2023, is stale and it will not be considered in the review of the four corners of the warrant to determine if probable cause existed.[23]  While there is no precise calculation for a set amount of time in which information becomes stale for such an analysis, the determination is to be made given the facts of each particular

---

[18] *Id.* at ¶ 10.
[19] *Id.* at ¶ 9.
[20] *Id.*
[21] *Id.* at ¶ 13.
[22] *Id.* at ¶ 14.
[23] *Sisson v. State*, 903 A.2d 288 (Del. 2006); *State v. Puglini*, 374 A.2d 822 (Del. 1977).

case. In this case, the information was known to WPD approximately six (6) months prior to the more recent tips before any confirmatory action was taken. Taken together with the fact the information was provided by an anonymous source – with no further details listed in the warrant – who provided information regarding a seemingly unrelated female named "Brandy," this information is not appropriate for consideration in a probable cause analysis.[24]

13.    That said, the remainder of the information provided in the warrant establishes probable cause for the search of 724 North Pine Street. The Affidavit details multiple information sources all telling WPD about drug sales occurring from this location. To the extent that the reliability of the information sources can be questioned, i.e. the "drug watch complaint" listed – with no further information provided – and the "community contact" – again, with no further information provided, the totality of the tips including the information provided with respect to the past, proven reliable confidential informant lend credence to the reliability of the information. While the less informative sources alone would be insufficient, looking at the tips collectively and in conjunction with the observations of the officers was well as the past, proven reliable informant, the magistrate had a substantial basis to support a finding that probable cause exists to search 724 North Pine Street.[25]

---

[24] *Puglini*, 374 A.2d at 823.
[25] *Holden*, 60 A.3d at 1114; *Morgan v. State*, 962 A.2d 248 (Del. 2008); *c.f. State v. Spady*, 2018 WL 4896335 (Del. Super. Oct. 8, 2018) (invalidating a controlled

14. Finally, Defendant contends the seizure of the firearms was invalid, as the search warrant fails to give authority to such a search, based upon the "Greetings" page only granting authority to search for "heroin/fentanyl and any drug related paraphernalia commonly used to process, package, and/or consume drugs are being concealed on (premises)(person)  [sic] described in the annexed affidavit and application or complaint…[sic]."[26]

15. Defendant's argument, while not misplaced, is unavailing. It is without question that this warrant lacks attention to detail. However, the warrant mentions the request to seize firearms throughout the Application and Affidavit, as listed above. The failure to also include firearms on the "Greetings" page of the warrant is akin to a "scrivener's error." It is clear from the intent of the warrant that weapons were sought, and information was included in the Affidavit regarding the correlation between drug dealing and the use of firearms.[27] Therefore, it is reasonable to assume

---

buy for probable cause determination because the subject was out of view from the officers in a multi-unit apartment building casting doubt on whether the drugs in question were, in fact, purchased by Spady; which is distinguishable from the facts in this case.).

[26] Def. Mtn. to Suppress, Ex. A.

[27] The Affidavit in paragraph 17, lists out commonly known activities of "Drug Traffickers", which includes the possession of firearms in items "F" and "I". It is not lost on the Court that the Affiant previously mentioned Defendant's activities were consistent with "street level drug sales" in paragraph 9, however, given the standard of proof required to establish a nexus for a search, it is met here, albeit with an admonition from the Court to be more mindful of the quality of the Affidavit submitted.

the omission of detailing "firearms" from the Greetings page, while certainly not ideal or condoned by the Court – does not invalidate the seizure.

16.    Even if it would, Title 11, Section 1447A of the Delaware Code prohibits possessing a firearm during the commission of a felony.  Notably, Defendant was charged with two (2) counts under this statute.[28]  The weapons-related offenses of which Defendant was charged globally stem from the location of eight (8) rounds of ammunition located on the windowsill of the living room,[29] a loaded Ruger EC9S 9mm handgun in a holster on the Defendant's nightstand,[30] and a loaded Springfield Armory XDM 9mm handgun located under a bed in an adjacent bedroom.[31]  Under 11 *Del C.* §1447A, Defendant was charged with possession the Ruger EC9S 9mm handgun located in his bedroom and the Springfield Armory XDM 9mm handgun located in the adjacent bedroom, during the commission of a felony in Counts I and II of the Indictment.  Therefore, even if the seizure of the firearms wasn't legally authorized on the face of the warrant, these weapons may have been lawfully seized under the plain view doctrine.

---

[28] D.I. 3, Counts I & II.  It is not clear from the record whether the officers knew of Defendant's alleged prohibited status at the time of the seizure, therefore the Court's finding is limited to offenses under this section and not 11 *Del. C.* § 1448.
[29] State's Resp. to Mtn. to Suppress, p. 4.
[30] *Id.* at p. 5.
[31] *Id.*

17.    Based upon the record before the Court from the parties' submissions, it appears as if the plain view doctrine is satisfied in that: 1) the officers were lawfully in the house pursuant to the search warrant; 2) the items evidentiary value would have been immediately apparent given the very nature of the evidence at hand – firearms; and 3) the officer had lawful right of access to the firearms.[32]  This finding is qualified, however, because the full record has not been established insofar the parties did not request an evidentiary hearing on this matter, given the four-corner review, and this issue was raised in detail in the Defendant's "Sur-Reply" to his initial motion.[33]  Should the record in this case be further expanded to question whether this doctrine has been met, Defendant is free to re-litigate this finding.

**THEREFORE**, for the reasons stated above, Defendant's Motion to Suppress is **DENIED.**

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge

Cc:    Brett Fallon, Esquire, Deputy Attorney General
       Diane Coffey, Esquire, counsel for Defendant
       Original to Criminal Prothonotary

---

[32] *Hardin v. State*, 844 A.2d 982, 985-986 (Del. 2004) (citing *Minnesota v. Dickerson*, 508 U.S. 366 (1983).
[33] D.I. 13, 15.