IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      :

                              :     ID No. 1805009371 WLW

    v.                   :

                              :

EUGENE RILEY,         :

                              :

        Defendant.    :

Submitted: June 13, 2019
Decided: June 20, 2019

**ORDER**

Defendant's Motion to Suppress Evidence (DNA Search Warrant)
*Denied.*

Gregory R. Babowal, Esquire of the Department of Justice, Dover, Delaware; attorney for the State of Delaware.

Alexander W. Funk, Esquire of Curley Dodge & Funk, LLC, Dover, Delaware; attorney for Defendant.

WITHAM, R.J.

Before the Court, is Defendant Eugene Riley (hereinafter "Defendant") and his Motion to Suppress DNA evidence pertaining to the seizure of his DNA after his arrest. The DNA was collected via buccal swab pursuit to a search warrant signed by Justice of the Peace Court #7 (hereinafter "JP Court").

After considering Defendant's motion, the State's response in opposition, oral argument, and the record, it appears to the Court that:

1. On May 13, 2018, Jameir Vann-Robinson (hereinafter "Victim") was shot and killed following a verbal altercation at 82 Mitscher Road in Dover, Delaware.

2. Law enforcement officers responded to the scene of the shooting and located four (4) 9mm shell casings and six (6) .40 shell casings along the sidewalk and roadway in close vicinity to the scene at 106 Mitscher Road.[1]

3. A subsequent investigation revealed that two suspects, Defendant and Ahmir Bailey (hereinafter "Defendant Bailey") had allegedly shot the victim at or near 82 Mitscher Road. The investigation also led law enforcement to discover one of the handguns used in the shooting, along with magazines and ammunition matching the handguns, during the execution of a search warrant at Defendant's residence.[2]

4. On May 14, 2018, Defendant and Defendant Bailey were arrested.

---

[1] 106 Mitscher Road is located less than 300 feet from 82 Mitscher Road.

[2] *See* D. Ex. A - Affidavit of Probable Cause Attached to Defendant's Motion (hereinafter "Affidavit of Probable Cause") at ¶ 11 (May 14, 2018). Law enforcement executed a search warrant at 21039 Cubbage Pond Rd., Lincoln, Delaware, Defendant's residence, and located a loaded .40 caliber M&P handgun, a .40 caliber magazine loaded with six rounds, a box of 9mm ammunition, and a 9mm magazine with 6 rounds.

5. That same day, Detective Stephen Boone (hereinafter "Det. Boone"), Dover Police Department, applied for a Search Warrant from JP Court #7 that sought to collect Defendant's DNA and compare it to DNA recovered from weapons and ammunition found at Defendant's residence. The Affidavit stated, in pertinent part:

> Affiant is requesting to secure a sample of [DNA] from [Defendant] *for an analysis/comparison* with a sample from the recovered .40 caliber M&P handgun, .40 caliber magazine..., box of 9mm ammunition, 9mm magazine..., and any other evidence seized relating to this incident that may contain [Defendant's] DNA.[3]

6. Defendant's DNA was analyzed and determined to match DNA recovered from the weapons and ammunition found at Defendant's residence.

7. On May 13, 2019, Defendant filed his suppression motion seeking to suppress the seized DNA. The State's response, in opposition, was filed on May 16, 2019. The Court heard oral arguments on May 30, 2019 and reserved its decision because of (1) a factual discrepancy regarding the method of DNA collection[4] and (2) the Court's granting both parties time to submit additional briefing on the issue of DNA collection being lawful pursuant to a valid search incident to arrest that was raised by the State in its reply.

8. In his motion, Defendant asserts the search warrant was invalid as it did not establish probable cause because Det. Boone's affidavit was conclusory and

---

[3] *Id.* at pg. 2 (emphasis added).

[4] The factual discrepancy was resolved by defense counsel in a letter dated May 31, 2019. Defense counsel confirmed Defendant's DNA was taken via oral buccal swab.

insufficient to establish a proper foundation for obtaining his DNA.[5]

9. The State counters Defendant's argument by contending law enforcement officers need not determine whether a known DNA sample has been recovered from a crime scene before establishing a logical nexus for a DNA search warrant.[6] Rather, the nexus required must be demonstrated by a fair probability that the seized DNA can be linked to the crime.[7] Alternatively, the State asserts the DNA seizure was permissible pursuant to a valid search incident to arrest.[8]

10. On a motion to suppress challenging the validity of a search warrant, a defendant bears the burden of establishing that the challenged search or seizure was unlawful.[9]

11. Section 2307 of Title 11 of the Delaware Code authorizes a judicial officer to issue a warrant if the facts recited in the complaint constitute probable cause for the search.[10] Unless there is a showing of a factual basis for probable cause within the "four corners" of the affidavit that was submitted to the judicial officer in support of

---

[5] D. Mot. at ¶¶ 26-28.

[6] St. Reply at ¶ 8; *see also State v. White*, 2017 WL 1842784, at *5 (Del. Super. May 8, 2017)(Clark, J.).

[7] *Id.* (citing *White*, 2017 WL 1842784, at *5).

[8] St. Reply at ¶ 13.

[9] *White*, 2017 WL 1842784, at *2 (citing *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005) (stating that "[o]n a motion to suppress challenging the validity of a search warrant, the defendant bears the burden of establishing that the challenged search or seizure was unlawful.")).

[10] *See* 11 *Del C.* § 2307(a).

the warrant, the warrant will not be issued.[11] The judicial officer issuing the warrant must make a practical, common-sense decision whether, given all the circumstances set forth in the accompanying affidavit, including the veracity and the basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.[12] In other words, a logical nexus must be established between the sought after items and the place in which law enforcement wishes to search.[13]

12. This Court grants great deference to the judicial officer's determination of probable cause.[14] In determining whether probable cause exists to obtain a search warrant, Delaware courts apply a "totality of the circumstances" test.[15] In so keeping, this Court will review the judicial officer's determination for the substantial basis for concluding that probable cause existed.[16]

13. Defendant argues that language found in Det. Boone's affidavit supporting a search warrant to collect his DNA was nothing more than a collection of conclusory statements that are insufficient to establish the required heightened nexus between his

---

[11] *State v. Morris*, 2017 WL 6513487, at *1 (Del. Super. Dec. 19, 2017) (citing *Pierson v. State*, 338 A.2d 571, 573 (Del. 1975)).

[12] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) (citing *Illinois v. Gates*, 462 U.S. 213, 237 (1983).

[13] *White*, 2017 WL 1842784, at *2 (citing *Hooks v. State*, 416 A.2d 189, 203 (Del. 1980)).

[14] *Holden*, 60 A.3d at 1114 (citing *Gates*, 462 U.S. at 238–39).

[15] *LeGrande v. State*, 947 A.2d 1103, 1107-08 (Del. 2008) (citing *Sisson*, 903 A.2d at 296).

[16] *Holden*, 60 A.3d at 1114 (citing *Gates*, 462 U.S. at 238–39).

DNA and evidence of a crime. Defendant relies on *State v. Campbell*[17] and also cites to the recent bench decision in *State v. Risper*[18] in support of his position. This Court finds, however, that this case is distinguishable.

14. In light of Defendant's reliance on *Campbell*, the Court feels a review of the case would be helpful.[19] In *Campbell*, law enforcement obtained a search warrant for the defendant's DNA.[20] In that affidavit, the only information regarding DNA was following statement:

> [y]our affiant is aware that several casings from the firearm that was fired were located at the scene and collected as evidence, [and] [y]our affiant is aware that it *is possible* to collect DNA evidence of the suspect(s) from the casings. Your affiant is aware that DNA belonging to [defendant] 8/3/1988 can be compared to any DNA found on the casings.[21]

The *Campbell* court expressed concern that the affiant's statement was "not supported by the detective's personal knowledge gained from work experience or other investigations that may have occurred or [was] even based on specific training or education."[22]

---

[17] *State v. Campbell*, 2015 WL 5968901 (Del. Super. Oct. 5, 2015).

[18] *State v. Risper*, No. 1805007714 (Del. Super. Mar. 29, 2019) (Bench Order).

[19] The Court notes, however, as it did in *State v. White*, that while *Campbell* is instructive and persuasive, its relevant analysis is dicta.

[20] *Campbell*, 2015 WL 5968901, at *1.

[21] *Id.* at *4 (emphasis added).

[22] *Id.*

15. In its further discussion, the *Campbell* court acknowledged that many jurisdictions have held that without "law enforcement recovery of a comparison sample of DNA, a DNA swab search warrant is unsupported by probable cause."[23] However, the court, without discussing binding or persuasive authority rejecting this approach, merely rejected it because it "goes too far."[24]

16. Relevant to our Defendant's case, *Campbell* further discussed that "[a]t a minimum, the assertions made in the affidavit must be supported by training, education, or experience that would reasonably justify and explain the detective's conclusion that DNA could reasonably be recovered from the particular object."[25] In *State v. White*, this Court agreed with *Campbell* in that probable cause should not be rejected automatically on nexus grounds if law enforcement does not specifically recite in the affidavit that DNA evidence was found at the crime scene, and found that what is required for a showing of such a nexus is that there is a *fair probability* that

---

[23] *Id. See also Hindman v. United States*, 2015 WL 4390009, at *2 (N.D. Ala. July 15, 2015) (holding that in order to establish probable cause for DNA, "the government must possess a testable DNA sample sufficiently linked to the subject crime, which might then be compared to the suspect's sample to attempt to establish a 'match' "); *United States v. Robinson*, 2011 WL 7563020, at *5 (D. Minn. Dec. 2, 2011) report and recommendation adopted, 2012 WL 948670 (D. Minn. Mar. 20, 2012) (recommending that probable cause has not been established for the defendant's DNA because the government has not shown that DNA evidence on the firearm exists to compare against defendant's DNA); *United States v. Pakala*, 329 F.Supp.2d 178, 181 (D. Mass. 2004) (holding that the defendant cannot be subjected to a buccal swab until the government has determined whether the firearm contains a sufficient DNA profile in which to compare it to); *State v. Turnbull*, 61 V.I. 46, 54–55 (V.I. Super. Ct. 2014) (holding that absent a DNA sample to compare defendant's to, a search warrant lacks probable cause).

[24] *Id.* at *5.

[25] *Campbell*, 2015 WL 5968901, at *5 (emphasis added).

the seized sample of DNA can be linked to a crime.[26]

17. Turning back to Defendant's motion, the Court disagrees with Defendant and finds that a heightened nexus existed between Defendant's DNA and evidence collected at his residence. At first glance, however, it might appear that the opposite is true and that Defendant's case is in line with *Campbell* that there is not enough information in the affidavit to establish the required heightened nexus. Det. Boone's affidavit contains the following relevant information:

(1) Det. Boone's training and experience, including fifteen years collectively at both the Milford and Dover Police Departments;

(2) multiple witnesses, including a cooperating defendant, that witnessed Defendant at the scene of the crime;

(3) a cooperating defendant, who confessed to law enforcement that he and Defendant had both possessed firearms at the time of the shooting and utilized those firearms in carrying out the shooting;

(4) four 9mm shell casings and six .40 shell casings were located on the sidewalk area and roadway near 106 Mitscher Road;[27]

(5) a loaded .40 caliber M&P handgun, a .40 caliber magazine loaded with six rounds, a box of 9mm ammunition, and a 9mm magazine with six rounds of ammunition were seized pursuant to a search warrant at Defendant's residence; and

---

[26] *White*, 2017 WL 1842784 at *5 (emphasis added).

[27] 106 Mitscher Road is less than 300 feet from 82 Mitscher Road.

8

(6) a sample of DNA was recovered from the weapons and ammunition found at Defendant's residence.[28]

Indeed, a quick reading of *Campbell* may lead one to believe that the affidavit is not sufficient because it is not sufficiently supported by Det. Boone's personal knowledge gained from work experience or other investigations that may have occurred or even based on specific training or education.[29]

18.     However, the Court finds that while similar, this case differs from *Campbell*. In *Campbell*, DNA evidence had not been collected from evidence found at the scenes of the crimes, nor anywhere else, before those affidavits were submitted to the judicial officer for review of probable cause. Here, unlike *Campbell*, it is not a question of *could* DNA be reasonably recovered because DNA evidence had actually been recovered from evidence seized at Defendant's residence that correlated in caliber and type to shell casings found at the scene of the crime. This fact was further confirmed by the State at the suppression hearing:

Court: The affidavit itself of probable cause seems to indicate in the last

---

[28] *See* Affidavit of Probable Cause at ¶¶ 6-8; *Id.* at pg. 2 (Affiant is requesting to secure a sample of [DNA] from [Defendant] for an *analysis/comparison with a sample from the recovered .40 caliber M&P handgun, .40 caliber magazine..., box of 9mm ammunition, 9mm magazine...*, and any other evidence seized relating to this incident that may contain [Defendant's] DNA.) (Emphasis added).

[29] *Campbell*, 2015 WL 5968901, at *4. Furthermore, Det. Boone's affidavit was not as complete in regards to his raining and experience as the affiant in *State v. White*. In *White*, the affiant included that based on his experience investigating homicides, DNA is often left behind at crime scenes and that when perpetrators leave behind items they wore during the commission of the crime, those items can contain DNA. The affiant also stated that he believed the defendant's DNA would be found on the evidence collected at the scene. *White*, 2017 WL 1842784 at *5.

paragraph that the – which can be inferred by the [judicial officer], that there was a DNA sample recovered from the [.]40 caliber M&P handgun, and the [.]40 caliber magazine loaded with [six] rounds of ammunition and boxed with 9[mm] ammunition, a 9[mm] magazine with six rounds of ammunition, that that apparently does refer to.

State: Correct, but that is the specific evidence found at the [D]efendant's residence as established by the warrant.

Court: *So I presume that it would be your position that the [judicial officer] can assume, based upon facts in the affidavit, that there was a DNA sample taken, which could reasonably be viewed as a basis for another DNA sample that can be gleaned from the ammunition and weapon seized at the apartment where [Defendant] was residing.*

State: *Exactly.* And I believe that's why the officer put that specific information in there. A search warrant executed at this residence. That is the residence of the [D]efendant. Here's what's found at the residence, and goes forward from there.[30]

19. The Court finds it was entirely reasonable for the judicial officer to make the connection, albeit not implicitly stated in the affidavit, that DNA found in Defendant's residence on ammunition and a weapon that correlated precisely to the same caliber and type of shell casings found at the scene of the crime, could possibly belong to Defendant, who had already been legally detained and arrested on probable cause that he was involved in killing the victim.[31] Indeed, Det. Boone's affidavit,

---

[30] *State v. Riley*, No. 1805009371, TR at 28:5-23; 29:1-3, May 30, 2019 (emphasis added).

[31] Defendant conceded at oral argument that probable cause existed to believe that he had some involvement in the shooting.

confirmed by the State, clearly states that DNA was collected from a .40 M&P handgun and assorted ammunition seized pursuant to a valid search warrant from Defendant's home. Again, this is not the same as the situation in *Campbell* where the affiant stated in the affidavit that it was *possible* to collect DNA evidence from the items sought.

20. Rather, the Court sees this as precisely the situation that Judge Bradley recently spoke of in *State v. Risper* as pertaining to the heightened nexus required for DNA seizures:

> Regarding searches for a person's DNA, there has been what I would call a focused or a heightened or a perhaps somewhat different nexus requirement. *These cases have often required the affidavit for the search warrant to state that DNA evidence was obtained from the evidence the police have that can be compared to the person's DNA.* The rationale seems to be that the government ought to at least establish that it has something to compare a person's DNA to before getting a person's DNA.[32]

In this case, that appears to be exactly what the State did. They requested a search warrant to collect Defendant's DNA based on DNA located in his residence on weapons and ammunition that correlated with shell casings found at the crime scene.

21. The Court, after evaluating the facts recited in the affidavit under the totality of the circumstances test, and employing deference to the issuing judicial officer's determination, finds a fair probability existed that DNA from Defendant would be discovered on the weapons and ammunition that were *found in his residence*. Also, given the location of the seized evidence, the issuing judicial officer

---

[32] *Risper*, No. 1805007714 (Bench Order) (emphasis added).

11

could logically infer that Defendant may have handled those items in his role in the murder of the victim. As a result, the Court does not find the judicial officer erred in determining probable cause was present and, thus, the issuance of the search warrant to collect Defendant's DNA for comparison is lawful.

22. Had the Court not come to this conclusion, the State offers in the alternative that seizure of Defendant's DNA would still be constitutional because law enforcement performed the buccal swab pursuant to a search incident to arrest. The parties were both granted additional leave to submit arguments to the Court of whether, under Delaware constitutional and statutory law, a buccal swab taken incident to the arrest would fall under such an exception. However, since the Court has determined the search warrant lawfully provided for a buccal swab of Defendant, it is unnecessary for the Court to further address the issue of search incident to arrest.

23. For the reasons set forth above, the search warrant for Defendant's DNA was valid. Accordingly, Defendant's motion to suppress is **DENIED**.

**IT IS SO ORDERED.**

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc: Prothonotary
cc: Gregory R. Babowal, Esquire
    Kevin B. Smith, Esquire
    Alexander W. Funk, Esquire