**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**


STATE OF DELAWARE,                    )
                                      )
                                      )
        v.                            )       Case No. 1711014044
                                      )
JAYDEVSINH SOLANKI,                   )
                                      )
                                      )
        Defendant.                    )


Submitted: September 9, 2019
Decided: November 8, 2019


Angelica Endres, Esquire                    Joe Hurley, Esquire
Deputy Attorney General                     1215 King Street
820 N. French Street, 7th Floor             Wilmington, DE 19801
Wilmington, DE 19801                        Attorney for Defendant
Attorney for the State of Delaware


**MEMORANDUM OPINION ON**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**


Manning, J.

## FACTS AND PROCEDURAL HISTORY

On November 23, 2017, Jaydevsinh Solanki (hereinafter "Defendant") was arrested by Officer Matthew Granas ("Granas") for the offense of Driving a Vehicle Under the Influence of Alcohol ("DUI") in violation of 21 *Del. C.* § 4177. The facts that gave rise to this charge indicate that Granas observed a black Infinity G35 stopped in the middle of the road, approximately two car lengths behind the traffic light on Marrows Road at the intersection of East Chestnut Hill.[1] Granas approached the running vehicle and observed both occupants slumped over in their seats, either asleep or unconscious. Defendant was in the driver's seat and Daniel Hamill ("Passenger") in the passenger's seat; the time was approximately 3:45 a.m. Granas banged loudly on the front passenger window in an attempt to wake up the occupants. Passenger eventually awoke and Granas requested that he roll down the window and take the keys out of the ignition, Defendant did not wake initially. Once Defendant finally awoke, Granas asked if he needed an ambulance; however, Defendant assured Granas he was just exhausted. Granas questioned whether Defendant and passenger were drinking. Defendant did not answer, but Passenger replied in the affirmative. When Granas asked Defendant and Passenger whether they "had done any drugs," Passenger stated no and Defendant shook his head in the

---

[1] The entire interaction was recorded on Granas' body-worn camera ("bodycam"), which was entered into evidence by the State.

2

negative. Passenger stated, "we did do some drinking" at Buck's Tavern and Tailgates earlier in the evening. Defendant had a difficult time responding to requests to produce his license, registration and insurance, even attempting to hand police incorrect documents. Moreover, Defendant spent a considerable amount of time staring at the various documents he pulled from the glove compartment, evidentially unable to comprehend what he was looking at. Defendant's actions and movements were noticeably slow throughout the entire encounter. The bodycam recording corroborates Granas's in-court testimony and reveals that Defendant was hard to wake, appeared confused, moved very slowly with often-garbled speech, and was slow to follow instructions.

Based on these observations, Granas requested Defendant perform National Highway Transport Safety Administration ("NHTSA") Field Sobriety Tests ("FSTs"). Defendant agreed and they walked over to an adjacent parking lot to conduct the tests. Performance of the FSTs was captured on bodycam and entered into evidence by the State. Granas administered the Horizontal Gaze Nystagmus ("HGN"), Walk and Turn ("WAT") and One Leg ("OLS") tests. During the HGN, Defendant allegedly exhibited lack of smooth pursuit in his left and right eye, distinct nystagmus at maximum deviation in his left and right eye, and nystagmus onset before 45 degrees in his left and right eye, for a total of six clues.

During the WAT, Defendant had difficulty maintaining his balance at the start of the test, swayed, raised his arms, stepped off the line multiple times, and missed connecting his heal and toe during the administration of the test. Additionally, Defendant took 17 steps on the return trip, 8 more than the 9 he was instructed to take. All of this is plainly evident on the bodycam recording of the FSTs.

During the OLS test, Defendant allegedly exhibited difficulty complying with the test instructions and exhibited signs that he was under the influence. At the completion of the FSTs, Defendant was arrested for DUI. A warrant was subsequently obtained for a sample of Defendant's blood, which tested negative for alcohol, but positive for opioids (Morphine) and Benzodiazepine (Alprazolam).

On March 22, 2019, Defendant filed a Motion to Suppress ("Motion"). The Court held a hearing on the Motion on July 2, 2019. Upon conclusion of the hearing, the Court took the Motion under advisement. At the request of the Court, the State and Defendant both filed supplemental briefs following the hearing. On August 1, 2019, the State submitted its Motion Hearing Memorandum. On August 9, 2019, Defendant submitted his Memorandum of Law Regarding Invalidity of Blood Collection Search Warrant. On September 5, 2019, Defendant submitted his Reply Memorandum in Support of Suppression of Evidence. On September 9, 2019, the State submitted its Response to Defendant's Memorandum.

4

## PARTIES' CONTENTIONS

Defendant argues the State did not meet its burden that there was probable cause to find impairment justifying the arrest. In support of this argument, Defendant avers Granas provided no basis to conclude that he had the capabilities necessary to justify an excursion into the privacy afforded Defendant's blood. Defendant contends Granas failed to make a showing that he followed NHTSA standards of FSTs. Specifically, Defendant asserts Granas did not comply with the timing in the implementation of the HGN. Furthermore, Defendant argues the results of the WAT and OLS be given no weight because Granas failed to follow the standardized instruction that must be given in order to ensure reliability. In addition, Defendant asserts Granas failed to make a proper showing that he was qualified and certified to conduct standardized field sobriety test and that he received specialized training in administering and grading all of the FSTs. Moreover, Defendant claims Granas failed to identify in the affidavit the specific tests he administered and Defendant's performance on each, which is required to find the non-scientific WAT and OLS admissible.

Furthermore, Defendant avers glassy eyes, slurred speech, loss of balance and difficulty following instruction are general, vague and unparticular comments that could be attributed to Defendant being awakened from sleep. Defendant contends he denied drug use, never indicated he drank that night, and that the odor of alcohol

5

was associated with the interior of the car, rather than emanating from his person. Moreover, Defendant states he spoke clearly and had no issues with balance.

The State argues Granas properly obtained a valid warrant for the seizure and subsequent testing of Defendant's blood. The State asserts Granas provided his current position within the search warrant affidavit, which gave the magistrate the information necessary to find him capable of performing a DUI investigation. Further, the State avers while Granas did not mention the results of the WAT and OLS in the search warrant, Granas did state Defendant was unable to perform either test, which corroborated his awareness of the tests. Moreover, the State claims the magistrate judge could consider the HGN results. However, the State argues if this Court finds the FSTs cannot be part of the analysis, the Court should still evaluate the remaining probable cause contained in the affidavit. The State refers to the vehicle parked and running at an intersection, Defendant sleeping in the driver seat, Passenger admitting to Granas that they were both drinking earlier that night, the odor of alcohol emanating from the vehicle, Defendant's glassy eyes, slurred speech, loss of balance and difficulty following instructions. The State argues these observations amount to probable cause.

Additionally, Defendant asserts the search warrant was overly broad in permitting the collection of Defendant's blood sample when there was no probable cause justifying the collected sample for the purpose stated in the affidavit and

6

warrant with regard to drug impairment. Defendant argues the affidavit supplied information regarding alcohol ingestion, not drug ingestion. Defendant states there is no logical, factual, nexus between the facts articulated in the affidavit and authority to collect blood for the purpose of conducting a drug analysis.

The State avers the search warrant was not overly broad in permitting the collection of a blood sample because there was probable cause justifying the testing. The State argues the search warrant permitted the collection of Defendant's blood for evidence of intoxication in a driving under the influence investigation. Further, the State asserts that an officer has the ability to request blood under all theories. The State argues the affidavit states facts not specifically related to alleged use of alcohol but rather the use of alcohol and/or drugs. The State contends the search warrant affidavit was not limited to a finding of probable cause of use of alcohol but the use of alcohol and/or drugs. Lastly, the State avers the classification of evidence of alcohol and/or drugs was reasonable and a more precise description would not have been feasible.

## DISCUSSION

For a warrantless arrest, "the State must establish, by a preponderance of the evidence, that Defendant's arrest was supported by probable cause." [2] To establish

---

[2] *State v. Anderson*, 2010 WL 4056130, at *3 (Del. Super. Oct. 14, 2010).

7

probable cause for a DUI arrest, the state "must present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a DUI offense." [3] This totality consideration is based on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." [4] "The Court must examine the totality of circumstances surrounding the situation as viewed through the 'eyes of a reasonable trained police officer in similar circumstances, combining the objective facts with the officer's subjective interpretation of those facts.'" [5]

## Field Sobriety Tests

The NHTSA developed FSTs for officers to utilize when evaluating drivers suspected of alcohol and/or drug impairment. NHTSA's 2018 DWI Detection and Standardized Field Sobriety Testing (SFST) Refresher Guide advises that validation of FSTs only applies when "[t]he tests are administered in the prescribed, standardized manner... [and] [i]f any one of the [FSTs] elements is changed, the

---

[3] *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011).

[4] *State v. Cardona*, 2008 WL 5206771, at *3 (Del. Super. Dec. 3, 2008) (quoting *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993)).

[5] *State v. Kane*, No. 1210019022, 2014 WL 12684290, at *4 (Del. Com. Pl. Feb. 12, 2014); *See Woody v. State*, 765 A.2d 1257, 1262-64 (Del. 2000).

validity may be compromised." [6]  However, "[n]o Court in this jurisdiction ha[s] concluded that a failure to strictly comply with NHTSA invalidates the test." [7] Nevertheless, sufficient deviation from the NHTSA guidelines can diminish FSTs reliability.[8]  Thus, "[t]he court's role is to take note of the deficiencies in the administration of the sobriety test when giving weight and value to the test performed." [9]

When an officer conducts the WAT, the officer must instruct the subject to take nine heel-to-toe steps, turn in a prescribed manner, take nine heel-to-toe steps back, keep arms at one's sides, watch one's feet at all times and count one's steps out loud.[10]  Further, the officer must ask and make sure the subject understands the instructions.[11]

Granas failed to instruct Defendant to keep his arms at his sides, look at his feet, count his steps aloud and ask him if he understood the instructions.  Granas

---

[6] National Highway Traffic Safety Administration, *DWI Detection and Standardized Field Sobriety Testing (SFST) Refresher*, Session III, 2018 Edition.

[7] *State v. Dale*, 2016 WL 691445, at *3 (Del. Com. Pl. Feb. 11, 2016).

[8] *State v. Reilly*, 2018 WL 7049372, at *3 (Del. Com. Pl. Nov. 30, 018) citing to *State v. Hudgins*, 2015 WL 511422, at *3 (Del. Super. Jan. 16, 2015).

[9] *Dale* at *3.

[10] National Highway Traffic Safety Administration, *DWI Detection and Standardized Field Sobriety Testing (SFST) Refresher*, Session III, 2018 Edition.

[11] *Id.*

failed to comply with the instructional part of the NHTSA test. Thus, I cannot view it with the same reliability as if the test was properly conducted. However, I am still permitted, and indeed will, take into consideration my observation of Defendant during the performance of the test. As previously noted, bodycam footage shows that Defendant had *extreme* difficulty maintaining his balance throughout the test, swayed, raised his arms, stepped off the line multiple times, missed nearly every heal to toe connection, took 17 steps instead of nine, and was unable to follow instructions—all obvious indicia of some form of impairment. Simply put, Defendant's performance on this test leaves me with little doubt that he was suffering from some type of impairment—no matter the deficiencies with the administration of the test instructions.

When an officer conducts the OLS, the officer must instruct the subject to raise either foot approximately six inches off the ground, with both legs straight and arms at one's side and count aloud while looking at the elevated foot.[12] Indicators that the subject is impaired are swaying while trying to maintain balance, using arms to help maintain balance, hopping while trying to maintain balance and putting a

---

[12] *Id.*

10

foot down before the test is completed.[13] A showing of two of more clues indicates a blood alcohol content of 0.08 or above.[14]

Granas failed to instruct Defendant to look at his elevated foot while counting aloud. Further, Granas testified that his report stated Defendant depicted all four indicators of impairment; however, after review of the bodycam during cross-examination, Granas testified Defendant did not hop while trying to maintain his balance. I have observed the bodycam footage and find Defendant exhibited two of the indicators of impairment—foot touching the ground and swaying. However, due to Granas's failure to comply with the NHTSA instruction, I can only give minimal weight to the results of the OLS test.

When an officer conducts the HGN, the officer must instruct the subject to stand with one's feet together, hands at one's sides, hold one's head still and follow the motion of a stimulus with the eyes only.[15] Although the standards do not state how long the HGN should take in its entirety, the Delaware Superior Court in *Dale* found an HGN test conducted within fifty-five (55) seconds was "not a minor

---

[13] National Highway Traffic Safety Administration, *DWI Detection and Standardized Field Sobriety Testing (SFST) Refresher*, Session III, 2018 Edition.

[14] *Id.*

[15] *Id.*

11

deviation."[16] This finding differs from the Courts finding in *State v. Oseguera-Avila* that "82 seconds [was] not significantly shorter than the 96-second minimum period exacted by the [d]efense."[17]

The bodycam indicates that it took Granas only 50 seconds to conduct the HGN test, an amount of time even shorter than the disregarded HGN conducted in *Dale* that the Superior Court considered "not normal."[18] Because Defendant's HGN test was conducted considerably faster than it should have been, and the deviation from the NHTSA instructions were significant, I do not find the test to be sufficiently reliable and therefore it is excluded from the probable cause determination.

## Traffic Stop and Officer's Observations

The Delaware Supreme Court in *Bease v. State* found probable cause to arrest and administer an intoxilyzer test existed where a motorist, who had just committed a traffic violation, spoke rapidly, smelled of alcohol, admitted consumption of alcoholic beverages, and had blood shoot glassy eyes.[19] The Delaware Supreme Court in *Lefebvre* held probable cause to arrest a driver for a DUI offense exists

---

[16] *Dale* at *3.

[17] 197 A.3d 1050, 1056 (Del. Super. Nov. 2, 2018).

[18] *Dale* at *3.

[19] 884 A.2d 495, 498 (Del. 2005).

12

where an officer can "present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a DUI offense."[20] In this case, the Supreme Court found probable cause to arrest a driver for DUI prior to the administration of any FSTs.[21] "[T]he performance results of field sobriety tests may either eliminate suspicion or elevate suspicion into probable cause but they are of insufficient evidentiary weight to eliminate probable cause that had already been established by the totality of the circumstances before the performance of the field sobriety tests."[22] Moreover, the Delaware Superior Court in *Hudgins* found that "[t]he totality of the facts and circumstances underlying [a] suspect's arrest can support a finding of probable cause even where no field sobriety tests were administered..."[23] In that case, the defendant's bloodshot eyes, slurred speech and the odor of alcohol emanating from his breath was "ample evidence to support a finding that there was probable cause to arrest [d]efendant for a DUI offense."[24]

---

[20] *Lefebvre* at *292.

[21] *Id.*

[22] *Id.* at *295.

[23] *Hudgins* at *4.

[24] *Id.*

Here, Defendant's vehicle was stopped behind a traffic light at an intersection. The vehicle was running and Defendant was asleep behind the wheel. His lethargic responses, difficulty following instructions, garbled speech, very poor performance on the WATs, and glassy eyes put Granas on notice that he was impaired. For all of the aforementioned reasons, I hold that probable cause existed to arrest Defendant for the crime of DUI.

## Blood Search Warrant

Before a magistrate issues a search warrant, she "must find that probable cause exists that evidence of a crime will be found in the place to be searched." [25] "An affidavit of probable cause in support of a search warrant must contain sufficient facts to establish probable cause within the 'four corners' or on the face of the affidavits. Probable cause exists in the affidavit where there is 'a logical nexus between the items sought and the place to be searched.' "[26] "Such a nexus can be 'inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inference as to where a criminal would hide evidence of a crime.' "[27]

---

[25] *Rybicki v. State*, 119 A.3d 663, 668 (Del. 2015).

[26] *State v. Nieves-Torres*, 2001 WL 2083958, at *6 (Del. Super. Apr. 25, 2011) (quoting *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000)).

[27] Id. (quoting *State v. Cannon*, 2007 WL 1849022 at *4 (Del. Super. Oct. 18, 2000)).

The Delaware Supreme Court in *State v. Holden* observed that "[a] court reviewing the magistrate's determination has the duty of ensuring 'that the magistrate had a substantial basis for concluding that probable cause existed.' A magistrate's determination of probable cause 'should be paid great deference by reviewing courts' and should not, therefore, 'take the form of a de novo review.' "[28] " 'Notwithstanding this deference,' the reviewing court must determine whether the magistrate's decision reflect a proper analysis of the totality of the circumstances."[29]

Addressing one of Defendant's foundational arguments first, Granas stated in his affidavit that he was a "sworn Police Office with the New Castle County Police Department and has been employed by same since December 2016." This fact alone allowed the issuing magistrate to reasonably conclude that Granas had the requisite knowledge and training to conduct a DUI investigation, including the administration of FSTs. Defendant's argument to the contrary is without merit.

In his affidavit, Granas detailed the discovery of Defendant unconscious behind the wheel of a running vehicle at an intersection. The affidavit further indicated that an odor of alcohol emanated from the vehicle, and that Defendant had

---

[28] 60 A.3d 1110, 1114 (Del. 2013) (quoting *Illinois v. Gates*, 462 U.S., 238-39, 103 S. Ct. 2317, 76 L.Ed.2d 527 (U.S. 1983)).

[29] *Id.* (quoting *LeGrande v. State*, 947 A.2d 1103, 1108 (Del. 2008)).

glassy eyes, slurred speech, loss of balance and difficulty following instructions. The Affidavit also stated that Defendant exhibited all six clues on the HGN, but "could not complete the W&T or the OLS."

Although the body of affidavit did not specifically state the search warrant was for drugs, the affiant suspected Defendant of impairment while driving and requested a warrant to search Defendant's blood for the crime of "Driving Under the Influence of Alcohol and/or Drugs — 21 Del. C. 4177a." [30] Simply stated, the failure to specifically state in the narrative portion of the search warrant affidavit that it was for drugs is not fatal — a DUI can be committed either way, or both. The affiant was looking for the cause of Defendant's impairment and a test of Defendant's blood is one way to obtain such information; thus, the requisite nexus to conduct a blood search existed here. Granas had reason to believe the Defendant's blood contained alcohol and/or drugs in violation of the statute, and as such, he requested a search warrant to determine the cause of that impairment.

I recognizing and concede that Granas' warrant affidavit is not a paradigm of drafting and certainly could have been more detailed and explicit. However, based on the all of the information contained within the document's four pages, I conclude that the magistrate's reliance on the information provided was reasonable

---

[30] Defense Exhibit 1, p.2, AFFIDAVIT AND APPLICATION FOR SEARCH.

and the warrant contained sufficient facts to demonstrate probable cause to believe that Defendant's blood may have contained evidence that he was driving under the influence of alcohol and/or drugs.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is **DENIED.** The matter shall be scheduled for trial forthwith.

**IT IS SO ORDERED**

Bradley V. Manning,
Judge