## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | I.D. No. 2506013076 |
| | ) | |
| TIMOTHY M. VONDUYKE, | ) | |
| | ) | |
| Defendant. | | |

Submitted: May 5, 2026
Decided: May 15, 2026

## ORDER

In this criminal prosecution for Driving Under the Influence, Defendant Timothy Vonduyke moves to suppress his on-scene arrest as unsupported by probable cause. He further moves to suppress his blood sample, challenging the search warrant used to obtain it. The parties convened for a hearing before the Court on May 5, 2026. At the outset, the Court sought to clarify the parties' positions regarding the burden of proof, the standard of review, and what evidentiary basis applies to this Motion. After discussing caselaw, the parties presented testimony on whether the arresting officer possessed probable cause to conduct a warrantless arrest of Mr. Vonduyke.[1] The parties also submitted that—if the Court determined there was sufficient probable cause to arrest—then the Court should scrutinize the

---

[1] While the parties did not cite *Swanson v. State*, the Court understands the argument presented to be similar. *See generally* 351 A.3d 496 (Del. 2025).

search warrant for Mr. Vonduyke's blood sample under a 'four corners' assessment.[2] The Court has reviewed counsel's arguments, factored for all applicable testimony, and considered governing caselaw.  The Motion to Suppress is DENIED.

### *Factual Background*

On the issue of probable cause to arrest, Sergeant Olicker of Newark Police Department testified.  By way of background, Sergeant Olicker has received training from the police academy on driving under the influence ("DUI") investigations, drug recognition, and advanced roadside impaired driving enforcement.  He instructs police recruits on standardized field sobriety tests.  In his estimation, he makes approximately two hundred traffic stops per year, of which around eight are for DUI investigations.

Sergeant Olicker testified that on the night at issue, he was driving a marked police car on East Cleveland Avenue.  As he approached a streetlight at which several cars were waiting, he noticed that the taillights of the first car—Mr. Vonduyke's white Jeep—were not illuminated.[3]  The light turned green, and all cars proceeded.

---

[2] The parties agreed that the portion of the search warrant related to the horizontal gaze nystagmus test should be redacted and not considered by the Court for these purposes.

[3] The State entered a video of the intersection as an exhibit.  That video does not show the Jeep's rear.

After Sergeant Olicker activated his lights, it took the Jeep roughly ¼ mile to pull over. Although the speed limit was thirty-five miles per hour, he traveled up to forty-eight miles per hour to catch the Jeep.[4] More specifically, the Jeep slowed (but passed) "numerous" parking lots prior to entering a shopping center.

Mr. Vonduyke was the driver. There were three passengers. A defense witness testified she was a passenger, along with two college friends; all three of them had been consuming alcohol at the Deer Park, a tavern.[5] After being apprised that the reason for the stop was "driving without any headlights or taillights," Mr. Vonduyke stated he thought the lights were automatic and apologized. He then appeared to adjust the lights.

Sergeant Olicker observed Mr. Vonduyke's eyes to be bloodshot and red. When asked on cross-examination about whether these observations can be made on the motor vehicle record ("MVR") recording, he testified that a video recording and its pixelation is distinct from what a human eye captures. Sergeant Olicker also noted a strong odor of alcoholic beverage coming from Mr. Vonduyke's breath. After making these observations and obtaining paperwork for the vehicle, the Sergeant asked Mr. Vonduyke to participate in an alphabet test and a counting test. Mr.

---

[4] Mr. Vonduyke was not charged with speeding.

[5] The Court questioned whether it was proper to consider this testimony on a probable cause analysis, noting the legal question is what the officer knew at the time. Since on the MVR recording from the stop Mr. Vonduyke stated he had just picked his wife up from the bar, the Court will consider that testimony.

Vonduyke passed the alphabet test. As for the counting test—to count backwards from seventy-six to sixty-one—he stopped at sixty-six.[6]

At that point, Sergeant Olicker asked Mr. Vonduyke to exit the vehicle, specifically telling him he smelled alcohol. During his testimony, the Sergeant stated his purpose was to separate Mr. Vonduyke from the other occupants and determine if the alcoholic odor was linked to him. Mr. Vonduyke responded by stating his passengers were drinking, but that he was "totally sober."

After discussing their concern for getting everyone home safely, Mr. Vonduyke asked which police agency employed Sergeant Olicker. Mr. Vonduyke then asked the Sergeant if he knew two other police officers, asserting that one had trained in mixed martial arts with him. This 'name-dropping' further raised the Sergeant's suspicion, as he felt that Mr. Vonduyke was attempting to influence his decision whether to further investigate. Mr. Vonduyke moved on to propose that Sergeant Olicker follow them home if he was concerned for their safety.

In continuing his investigation, Sergeant Olicker offered two standardized field sobriety tests—the one-leg stand and the walk-and-turn. Mr. Vonduyke refused, again suggesting the Sergeant could follow them home. He also refused to provide a breath sample. Mr. Vonduyke next sought to bargain with law enforcement

---

[6] According to Sergeant Olicker, the National Highway Traffic Safety Administration ("NHTSA") manual provides written guidance for administering the counting test, which is not a pass or fail test but demonstrates cognitive ability.

by getting an Uber—which he asserted would be "for all four of us"—and leaving the Jeep in the parking lot. The Sergeant told him that was not how it would work. Mr. Vonduyke began suggesting the officer would lose his job because of arresting him. He then went on to insult the pay of law enforcement officers. Mr. Vonduyke stated he would not "play this game" with the Sergeant and asked if he needed to get an attorney involved. Sergeant Olicker replied he could call whoever he wanted, but he was not free to leave. The parties agree that he was under arrest at that time.[7]

### *Parties' Contentions*

First, Mr. Vonduyke challenges probable cause to arrest. He argues the alphabet and counting tests are not "endorsed by NHTSA" and that the courts of this State "have consistently held there is no provable value regarding the results of these tests…." As such, he contends those should be "afforded no weight towards PC to arrest."[8] However, in *Bease v. State*, the Delaware Supreme Court condoned probable cause analyses that factor for failed alphabet and counting tests.[9] Mr. Vonduyke next addresses the horizontal gaze nystagmus ("HGN") test. The State

---

[7] On the MVR, Sergeant Olicker stated the arrest was for driving without headlights on and eventually for resisting arrest. During the hearing, the State asserted the arrest was for driving under the influence. Either way, for the reasons discussed below the Court finds probable cause existed to arrest Mr. Vonduyke.

[8] Def.'s Mot. to Suppress, D.I. 12, at 2.

[9] *Bease v. State*, 884 A.2d 495, 498–99 (Del. 2005) (collecting cases which factored for "failure of the alphabet and counting tests" in finding probable cause).

appears to agree with him on this point—it did not elicit any testimony on HGN administration or observation during the hearing.[10]

During the hearing, Mr. Vonduyke also raised the issue of reasonable articulable suspicion to stop his vehicle. Factually, Mr. Vonduyke asserts that—because the headlights were visible on the Jeep in the video introduced—the Court can (or should) infer his taillights were operational. He further stresses he was not cited for speeding and argues this Court should discount that fact for its analysis. Finally, he challenges probable cause for his blood draw. The State, not surprisingly, argues the facts of this case follow Delaware precedent and meet the required legal standards of each step in the interaction.

### *Legal Standards*

Both reasonable articulable suspicion and probable cause are considered under a totality of the circumstances framework.[11] Starting with reasonable articulable suspicion: an individual is seized when they are stopped in connection with a traffic violation.[12] This Court assesses reasonable articulable suspicion "as viewed through the eyes of a reasonable, trained police officer in the same or similar

---

[10] Additionally, reference to the HGN was redacted from the search warrant submitted to this Court.

[11] *Lefebvre v. State*, 19 A.3d 287, 295 (Del. 2011); *Jones v. State*, 745 A.2d 856, 861 (Del. 1999).

[12] *Houston v. State*, 251 A.3d 102, 108–09 (Del. 2021); *Caldwell v. State*, 780 A.2d 1037, 1045–46 (Del. 2001).

circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[13]

"An arrest 'requires probable cause that the suspect has committed a crime.'"[14] "Probable cause to arrest for a DUI offense exists when an officer possesses 'information which would warrant a reasonable man in believing that [such] a crime ha[s] been committed."[15] The State bears the burden of proof when a warrantless arrest is challenged.[16] During the hearing, the Court stated this was the defendant's burden. That is incorrect. Therefore, the Court will not conduct its analysis in that fashion. However, as will become relevant on the second question, "[o]n a motion to suppress challenging the validity of a search warrant, the defendant bears the burden of establishing that the challenged search or seizure was unlawful."[17]

Delaware courts have articulated probable cause to arrest for driving under the influence in various factual scenarios. A traffic violation coupled with the odor of alcohol is insufficient to establish probable cause.[18] More is required. In *Bease*,

---

[13] *Jones*, 745 A.2d at 861 (citations omitted).
[14] *Swanson v. State*, 351 A.3d 496, 514–15 (Del. 2025) (citations omitted) *quoting Flowers v. State*, 195 A.3d 18, 24 (Del. 2018).
[15] *Lefebvre*, 19 A.3d at 292 (alterations in original) *quoting Clendaniel v. Voshell*, 562 A.2d 1167, 1170 (Del. 1989).
[16] *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001) (citations omitted); *State v. Adams*, 13 A.3d 1162, 1166 (Del. Super. Ct. 2008) (citations omitted).
[17] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. Ct. 2005) (citations omitted).
[18] *Lefebvre*, 19 A.3d at 293 (citation omitted).

the Delaware Supreme Court determined rapid speech, odor of alcohol, admission to drinking the night before, bloodshot and glassy eyes, and a moving violation established probable cause.[19] In *Lefebvre*, a case with unique factual circumstances,[20] the Supreme Court clarified "[t]hat hypothetically innocent explanations may exist for facts learned during an investigation does not preclude a finding of probable cause."[21] More recently, the Supreme Court held that "speeding, failing to pull over, bloodshot and glassy eyes, an admission to drinking coupled with a smell of alcohol emanating from [the defendant] and the vehicle, mumbled speech, and a refusal to perform field sobriety tests" was sufficient to establish probable cause to arrest for driving under the influence.[22] In terms of how this Court should analyze or weigh a "refusal to submit to testing[,]" it "may be used for any relevant purpose, including to show consciousness of guilt."[23]

Finally, if the State has met its burden of supporting Mr. Vonduyke's warrantless arrest, then the Court must conduct a four corners analysis of the search warrant. Consistent with *Missouri v. McNeely*[24]—law enforcement procured a

---

[19] *Bease v. State*, 884 A.2d 495, 499–500 (Del. 2005).
[20] Lefebvre's counsel conceded there was probable cause to arrest her before field tests were administered. *Lefebvre*, 19 A.3d at 293. She passed the field tests—but the Court ruled favorable results on field tests are "of insufficient evidentiary weight to eliminate *probable cause* that had already been established by the totality of the circumstances before the performance of the field sobriety tests." *Id.* at 294, 295 (emphasis in original).
[21] *Id.* at 293 (citation omitted).
[22] *Bowie v. State*, 307 A.3d 327, at *2 (Del. 2023) (citations omitted).
[23] *Church v. State*, 11 A.3d 226, at *2 (Del. 2010).
[24] 569 U.S. 141 (2013).

warrant to obtain a sample of blood. On this point, Mr. Vonduyke carries the burden of establishing "by a preponderance of the evidence that the search [warrant] was unlawful."[25] Paying "great deference" to the magistrate's determination,[26] this Court reviews the four corners of the warrant to ensure the "magistrate had a substantial basis for concluding that probable cause existed…."[27] "The magistrate issuing the warrant must make a practical, common-sense decision … [that] there is a fair probability that contraband or evidence of a crime will be found in a particular place."[28]

### *Analysis*

### *Initial Detention and Warrantless Arrest*

The Court finds Sergeant Olicker had sufficient reasonable articulable suspicion to stop the vehicle for a traffic offense. In terms of the traffic stop, Mr. Vonduyke suggests Sergeant Olicker is not credible. To be clear, Mr. Vonduyke does not question the Sergeant's veracity; instead, he suggests that a mistake necessitates discounting the Sergeant's testimony on the speeding and the taillights.[29] Specifically, counsel argues that because the headlights are seen in the video, the

---

[25] *See State v. Clifton*, 2024 WL 3201166, at *4 (Del. Super.) *first citing State v. Chaffier*, 2023 WL 1872284, at *2 (Del. Super.); *and then citing State v. Cannon*, 2007 WL 1849022, at *2 (Del. Super.).

[26] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) *quoting Illinois v. Gates*, 462 U.S. 213, 238–39 (U.S. 1983).

[27] *Id.* at 1116 (citation omitted).

[28] *Id.* at 1114 *citing Gates*, 462 U.S. at 237.

[29] Mr. Vonduyke's counsel was clear that a *Franks* hearing was not requested in this case. *See generally Franks v. Delaware*, 438 U.S. 154 (1978).

Court can infer the taillights were both on and working. But the record is void of testimony regarding how the lights function on this vehicle. Further, in reviewing the MVR, this argument is without merit, because Mr. Vonduyke stated he thought the taillights were on, apologized, and then took steps to correct the problem.

As for speeding, because Sergeant Olicker testified that the cars between his and Mr. Vonduyke's were all speeding—yet they did not get tickets—therefore Mr. Vonduyke argues that the Court should not factor the speeding into a probable cause analysis. However, the defense has not supplied this Court with legal authority suggesting it must discount speeding because no citation was issued. The Court finds Sergeant Olicker credible in terms of his testimony that the Jeep exceeded the speed limit of thirty-five miles per hour. Moreover, the unilluminated taillight was sufficient to stop the car.

The Court also finds the State has met its burden of establishing probable cause for a warrantless arrest, based on the totality of the circumstances. The factors known to Sergeant Olicker included:

(1) speeding more than ten miles above the speed limit,

(2) unilluminated taillight,

(3) failure to stop for a ¼ mile after emergency lights were activated,

(4) bloodshot eyes,

(5) failure to follow the directions of the counting test,

(6) strong odor of alcohol (even when removed from the other passengers),

(7) insulting behavior,

(8) attempt to bargain with the officer to permit him to take an Uber and leave the scene,

(9) reference to personal relationships with law enforcement officers, immediately after being advised the officer smelled alcohol,

(10) refusal to engage in field sobriety testing,

(11) verbal resistance to arrest.

To be sure, no one factor is determinative, and the decision is based on a totality of the circumstances. In addition to many of the standard facts—such as traffic violations, a strong odor of alcohol, and bloodshot eyes—the demeanor of Mr. Vonduyke is significant. Mr. Vonduyke began the encounter with a polite demeanor. The timing of his reference to personal relationships with law enforcement is noteworthy, as it came immediately after Sergeant Olicker advised he detected the odor of alcohol. Mr. Vonduyke next moved to bargain with the officer, suggesting the police could follow him home or permit him to leave the scene in an Uber. Finally, when those efforts failed, he became insulting and combative. These changes in demeanor and their timing served to heighten concern that he was operating his vehicle while impaired and pursued various paths to evade investigation. Although no case presents these exact facts, this Court is persuaded

that Sergeant Olicker developed sufficient probable cause, based on the facts known to him, to arrest Mr. Vonduyke for driving under the influence.  The State has met its burden.

***Search Warrant***

In challenging the magistrate's decision to issue a search warrant for his blood, Mr. Vonduyke carries the burden.  He must show, by a preponderance of the evidence, that the warrant's four corners do not establish a fair probability that evidence of the crime of driving under the influence would be found in his blood sample.  In making this assessment, the Court will not consider Sergeant Olicker's testimony or the evidence submitted at the hearing.  The Court will only consider the redacted warrant itself.

With redaction, the search warrant consists of five paragraphs.  It first notes the affiant's experience in conducting DUI investigations.  Next, the warrant recites that the taillights on the Jeep were not illuminated.  It goes on to state Mr. Vonduyke advised police he picked up his passengers from a bar.  The arresting officer noticed Mr. Vonduyke had bloodshot eyes; the officer also "smelled a strong odor" of alcohol.  Mr. Vonduyke correctly completed one pre-exit test but did not correctly complete the other.  Once removed from the car, the officer continued to smell a strong odor of alcohol.  Finally, the warrant notes Mr. Vonduyke refused to conduct field tests or provide a breath sample.

While the Court pays great deference to the magistrate's determination, it must still ensure that "decision reflects a proper analysis of the totality of the circumstances."[30] Therefore, the Court will list the factors from the warrant:

(1) failure to have the taillights illuminated,

(2) Mr. Vonduyke's statement that he had picked up his wife and friends from a bar,

(3) bloodshot eyes,

(4) strong odor of alcohol from within the car,

(5) incorrect completion of the counting test,

(6) continued strong odor of alcohol once separated from passengers,

(7) refusal to conduct field sobriety testing or provide a breath sample.

Again, this Court notes a traffic violation with an odor of alcohol is insufficient to establish probable cause. But the information within the search warrant's four corners exceeds that bare showing. Based on the above factors and under a totality of the circumstances analysis, the Court finds Mr. Vonduyke has not carried his burden of establishing by a preponderance of the evidence that the search warrant for his blood was illegal. The search warrant outlines practical facts establishing probable cause that evidence of the crime of driving under the influence would be

---

[30] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) *citing LeGrande v. State*, 947 A.2d 1103, 1108 (Del. 2008).

found in Mr. Vonduyke's blood. Specifically, the Court recognizes the following as establishing a reasonable belief that supports the decision of the magistrate: the continued and persistent strong odor of alcohol after separation from others, statements that he had come from a bar (though no admission to drinking), bloodshot eyes, difficulty with the counting test, and the consciousness of guilt that may be inferred from his refusal to engage in field sobriety testing. For the forgoing reasons, the Motion to Suppress is DENIED.

**IT IS SO ORDERED.**

**/s/Sonia Augusthy**
Judge Sonia Augusthy